28  389
f42  687

WILLIE BROOKS ET AL. V. STATE OF NEBRASKA.

[FILED DECEMBER 31, 1889.]

1. Larceny: VALUE: EVIDENCE.   In a prosecution for the larceny of goods, witnesses called to testify as to the value of the property stolen must show that they possess knowledge of the value of such property.  (*Engster v. State*, 11 Neb., 539.)

2. ———: ———: ———.   Where the testimony showed that the property stolen consisted almost wholly of ready made clothing which had been worn on Sundays by the owner for about seven months, and that he could not testify to its actual value, an instruction that "as to the wearing apparel you will find its real value to the owner at the time of its being stolen," is erroneous.

ERROR to the district court for Lancaster county. Tried below before FIELD, J.

*Houston & Baird,* for plaintiff in error.

*William Leese, Attorney General,* for the state.

Cases cited by counsel are referred to in opinion.

MAXWELL, J.

The plaintiffs in error were indicted in Lancaster county for willfully and maliciously, in the day time, breaking into the sleeping rooms of George Maxwell and Ed. Thompson in a dwelling house in said county, on the 17th day of November, 1888, with the intent to steal; and that they did at said time and place unlawfully, willfully, and feloniously steal, take, and carry away property of the said Maxwell and Thompson of the value of forty-eight dollars.

On the trial of the cause the jury returned a verdict of guilty against both of the plaintiffs in error, and found the value of the goods stolen to be $36. They were thereupon sentenced to imprisonment in the penitentiary for two years.

The principal errors assigned in this court relate to the sufficiency of the testimony, and to the giving of the seventh paragraph of the instructions.

George Maxwell, a witness called by the state, after testifying to the loss of the goods in controversy, testified:

Q. .What is this suit of clothes worth?

A. I valued them at that time——

(HOUSTON—I object, as no foundation is laid to show this man is competent to testify to value.)

Q. Were these tailor made clothes?

A. No, sir.

Q. Were the coat and vest?

A. No, hand-me-downs.

Q. How long had you worn them?

A. I had worn them seven months.

Q. What did they cost?

A. They cost me $25.

Q. How much were they damaged by wearing?

A. I had worn them for a Sunday suit.

Q. You may state what this suit of clothes were worth at the time they were taken from the room.

(HOUSTON—I object, till it is shown that the witness is competent to testify.)

A. I stated on my word and honor that they were worth $20 to me.

Q. Did you lose anything else?

A. I lost a revolver.

THE COURT—Where is that suit of clothes?

STEARNS—They only found a pair of pants.

THE COURT—Are they there?

STEARNS—Yes, sir.

Q. How long had you had this revolver?

A. Three years.

Q. Would you recognize it if you saw it again?

A. Yes, sir.

Q. Is that it?

A. No, sir.

Q. Did you find it again?

A. I did not see it again.

Q. What kind of a revolver was that?

A. It was an American bull dog.

Q. How much had it been used?

A. I don't know, prior to my buying it, whether it had been used or not. I said three years I had it.

Q. Had you used it much?

A. No, sir; I had carried it that length of time when I had been traveling.

Q. What was the fair market value of that revolver when taken?

A. Five dollars.

(Houston—I object, as not shown competent to testify as to the value.)

Q. You bought and sold revolvers and saw what they sold for in the market?

A. I bought them and never sold any.

Q. By buying them do you know what they were worth?

A. Yes.

Q. What was this revolver worth in the market?

. (Houston—I object, because he has not shown himself competent to testify as to the value of these goods.)

Q. State what the fair market value of this revolver was.

A. Well, I stated it was worth $5.

Upon this testimony the court instructed the jury as follows: "If you find the defendants, or either of them, guilty of larceny, then in arriving at the value of the goods stolen you are instructed that you must determine this question from evidence before you, the same as any other fact necessary to the determination of the guilt or innocence of the defendants. Nothing must be assumed or taken for granted against the defendants, and in fixing the value of goods you must be satisfied, beyond a reasonable doubt, from the evidence that the value of the goods stolen is the amount fixed by you in your verdict. In fixing the value of goods you are not to be entirely governed by the price they would bring if sold as second-hand goods, but as to wearing apparel you will find its real value to the owner at the time of its being stolen, taking into account its cost, the amount of wear it has been shown to have had, its condition as proved to have been at the time of taking; as to the other property, you will fix its value at such amount as you find from the evidence such property has been proven to have been worth at the time and place of taking."

Now, even if such evidence is admissible in certain

cases — as where the clothes have a peculiar value from some specific cause—it cannot apply to mere ready made clothing which can be bought at any clothing house, and therefore was not applicable to this cause. The seventh paragraph of the instructions, therefore, was clearly erroneous.

Under the rule announced by the court below, a witness, smarting under the loss of his property, might swear that a handkerchief costing 50 cents was worth $50 *to him*, or a hat which cost $3 was worth to him $300. Such a rule practically nullifies the statute which makes the stealing of the goods *of the value of* $35 a felony.

In *Engster v. State*, 11 Neb., 539, concurred in by Judge COBB, it was held " on the trial of one E. for receiving stolen goods the statute making the receiving of such goods of the value of $35 and upwards a felony, that it devolved on the state to prove by competent testimony that the value of the goods was at least $35."

A witness, before he is competent to testify as to the value of property, must show by his testimony that he has knowledge of the value of such property.

The rule announced in that case is based on justice and should be adhered to unless there are good reasons for overturning it, which should be stated in the opinion.

In the brief of the attorney general it is said "it is not the policy of the law to discount the value or give rebates or special rates" to the thief. That is true. But neither has a court any right or authority, except mere force, to declare that a felony which the proof fails to show is such under the statutes. It is the duty of courts to administer the law, and it is a reproach upon any tribunal to allow a fictitious value to be placed upon stolen property in order to convict the accused of an offense higher than the facts will justify.

How can it be said that such a tribunal is impartial — holding the scales of justice even between the accused and

the state.    Had the legislature intended to change the rule in regard to the mode of proving values in cases of this kind, no doubt it would explicitly have so declared.

The precise question here presented was before this court in *Engster v. State*, 11 Neb., and it said: "A party who is permitted to testify as to the value of property must show by his testimony that he possesses knowledge as to such value, otherwise his testimony is mere conjecture and is wholly unreliable.    In an indictment where the value of the property must be or exceed $35 to constitute a felony, such value must be proved, like any other fact upon which a conviction depends, beyond a reasonable doubt.    This is a material fact, without proof of which the prosecution must fail."

In that case one Signor was called as a witness on behalf of the state and testified:

Q.  Are you a judge of clothing?

A.  Yes, sir, of mine.

And showing no other knowledge he was held not qualified to testify as to values.

The proof in this case clearly shows that the real value of the stolen goods was much less than $35, and the conviction of a felony was wrong, and is set aside, and the cause remanded to the district court.

REVERSED AND REMANDED.

COBB, J., concurs.

REESE, CH. J., dissenting.

The question presented in the case is, to my mind, not free from doubt.    Upon this subject here presented there is a dearth of authorities.    The usual rule, and that declared by the opinion in this case, does not seem to have been followed in all cases of this kind.

In *Faixfax v. N. Y. C. & H. R. R. R. Co.*, 73 N. Y.,

167, which was a civil action for the value of clothing alleged to have been lost by the defendant, in the action, the court of appeals, by Earle, J., says p. (172) : " The court did not err in charging the jury that the plaintiff was entitled to recover the full value of the clothing for use to him in New York and not merely what it could be sold for in money. The clothing was made to fit plaintiff, and had been partly worn. It would sell for but little if put into market to be sold for second-hand clothing, and it would be a wholly inadequate and unjust rule of compensation to give plaintiff in such case the value of the clothing thus ascertained. The rule must be, the value of the clothing for use by the plaintiff. No other rule would give him a compensation for his damages. This rule must be adopted because such clothing cannot be said to have a market price, and it would not sell for what it was really worth."

In 2 Bishop on Criminal Procedure, sec. 751, the author, in discussing this subject, says : "Any evidence from which the jury can infer the value of a stolen chattel is competent, (*Houston v. State*, 13 Ark., 66) as: What the owner testifies of its value to him (*Cohen v. State*, 50 Ala., 108); the opinions of witnesses acquainted with like property," etc.

It was shown upon the trial what the clothing, alleged to have been stolen by the plaintiffs in error, had cost when it was purchased, how much it had been used, to what extent it was worn, and its value to the owner.

Plaintiffs in error called two witnesses — one a pawnbroker, the other a keeper of a second-hand store—and sought to prove by them the value of the goods in the market, they placing it much lower than the other witnesses.

We are unable to see why the rule stated in the authorities above cited should not be applied to cases of this kind as well as in civil cases. The question to be decided was, What was the value of the property at the time it was taken. That question would necessarily depend, to some extent,

upon what it would cost to replace it with goods of the same quality and grade as those taken. The reasonable value of the property would depend upon the amount of service they could render to their owner. The actual intrinsic value was to be ascertained. This could not be done by placing them in a second-hand clothing store, or a pawn shop, and running the risk of finding another person whom they would fit, and to whom they would be as valuable as to the original owner. Again, I do not think it was shown by the evidence introduced by plaintiffs in error, nor perhaps could it be, that such property has a regular merchantable market value.

As stated in substance in the case above cited, the clothing was especially adapted to the service of its owner. For him the suit had practically the same value as a new one, it having been worn but little. Now, to say that because there was no demand for partly worn clothing, and that it had no market value according to its quality, and that as one method of disposing of such property was by sacrificing it for perhaps less than half what it was worth in a second-hand store, taking the hazard of finding another person whom it would fit, and to whom it could be sold, the value must be fixed by that standard, rather than the intrinsic worth of the property, for the use to which it had been dedicated, would be an unjust rule either in a civil action or a criminal prosecution for the larceny of the property.