STATE OF NEBRASKA, APPELLEE, v. JIMMY YBARRA, APPELLANT.

609 N.W. 2d 696

Filed May 2, 2000.   No. A-99-418.

Bernard J. Straetker, Chief Deputy Public Defender for Scotts Bluff County, for appellant.

Don Stenberg, Attorney General, and Marilyn B. Hutchinson for appellee.

HANNON, SIEVERS, and INBODY, Judges.

HANNON, Judge.

## INTRODUCTION

Jimmy Ybarra was convicted by a jury of shoplifting merchandise valued at $787, in violation of Neb. Rev. Stat. § 28-511.01 (Reissue 1995), a Class IV felony. See Neb. Rev. Stat. § 28-518 (Reissue 1995). Because the only evidence of the value of the merchandise taken was the price at which the merchandise was offered for sale, the trial court, following what it understood the holding of *State v. Garza*, 241 Neb. 256, 487 N.W.2d 551 (1992), to be, found that Ybarra was guilty of taking property of only less than $200, a Class II misdemeanor, see § 28-518, rather than the Class IV felony as found by the jury, and sentenced him to serve a term of 90 days in jail. Ybarra appeals, alleging generally that the evidence is insufficient to sustain the conviction for shoplifting.

Because after the crime in *Garza, supra*, was committed, the Nebraska Legislature made the value of articles stolen an element of theft crimes and not a mere measure of the penalty, we conclude that the trial court in the instant case erred by following *Garza* in lowering the grade of the offense. We also conclude that under the rule in *Garza* for proving value, the State failed to prove value, now an essential element of the crime of shoplifting, beyond a reasonable doubt. Accordingly, we reverse, and remand with directions to dismiss.

## SUMMARY OF EVIDENCE

On November 25, 1998, a complaint was filed in the Scotts Bluff County Court charging Ybarra with theft by shoplifting merchandise valued at more than $500 but less than $1,500 in violation of § 28-511.01(a). As we are required to do, we review the evidence in the light most favorable to the State. See *State v. Pierce*, 248 Neb. 536, 537 N.W.2d 323 (1995).

Scott Green, a loss prevention associate for the Wal-Mart store in Scottsbluff, observed Ybarra and a companion walking out with a shopping cart full of unbagged merchandise through one set of doors into the vestibule area of the store and stop just before proceeding through the second set of doors.

Green entered through the exit doors into the vestibule area and heard Ybarra under his breath tell his companion, " 'Just go, go.' " At that time, Green stopped the couple and asked for their receipt. Ybarra replied that the receipt was "back at one of the registers" and that he was going outside to smoke a cigarette and get medicine from his companion's car. There was a large amount of women's clothing, blankets, rugs, and toys in the shopping cart and all of the Universal Product Code (UPC) labels had been torn off the merchandise.

At that point, Leigh Amarie Whyte, an assistant manager for Wal-Mart, answered a page to go to the front of the store. She observed Green standing in the vestibule talking with a man and a woman. Whyte took possession of the cart and merchandise, and attempted to enter information about the merchandise into the cash register to determine its value. She was unable to do so because the tags with the UPC's containing the necessary information had been removed from the merchandise. She directed two associates to find matching merchandise with UPC's so she could enter the items into the register to determine a total price of the merchandise. They did so, and thereafter she keyed the necessary information into the register and obtained a printout listing the merchandise and the price the merchandise was offered for sale. Ybarra does not question the sufficiency of this procedure to obtain the Wal-Mart sale price of the subject merchandise. A portion of the receipt was offered into evidence. This procedure provided a list of the merchandise allegedly being shoplifted and the price that Wal-Mart held it for sale on that day was $787.

At trial, Ybarra took the stand. Ybarra testified that he and Mary Sitting Holy went to Wal-Mart to return a few items on November 24, 1998. After shopping for a while, Sitting Holy told him that she was tired and needed to sit down and smoke a cigarette. Sitting Holy pushed the cart to the first door of the vestibule and sat on a bench. He testified that the cart was 2 feet away from the vestibule and that the "buzzer" on the door did not sound when they walked through. Sitting Holy was going to give Ybarra the keys to the vehicle so that he could get her purse, but Green appeared and asked him where he was going. Ybarra

testified that as he was speaking to Green, people started running and pushing him forward out the first door.

At the close of the State's case, Ybarra made a motion for a directed verdict upon the basis of *State v. Garza*, 241 Neb. 256, 487 N.W.2d 551 (1992), and upon the ground that the evidence was otherwise insufficient. The trial court overruled that motion, as well as a renewal of that motion which was made at the close of all the evidence.

The jury returned a verdict that Ybarra was guilty of theft by shoplifting and found the value of the property taken was $787. The trial court accepted the verdict on the underlying crime and found Ybarra guilty, but because it found the evidence on value was insufficient, it found Ybarra guilty of only the minimum theft offense under § 28-518(4), that is, a Class II misdemeanor, as provided when the value of the thing involved is $200 or less.

### ASSIGNMENTS OF ERROR

Ybarra alleges (1) that insufficient evidence was adduced by the State to prove beyond a reasonable doubt that he had committed the crime alleged and (2) that the sentence imposed upon him, although within the statutory limits, was excessive and constituted an abuse of discretion by the trial court.

At the close of the State's case in chief, Ybarra cited and relied upon *Garza, supra*, as one of the grounds for the insufficiency of the State's evidence, vis-a-vis the evidence on the value of the merchandise involved. This motion was renewed at the close of all the evidence without argument. Ybarra does not assign the denial of either of these motions as error.

Immediately upon the return of the jury verdict, the judge applied the teaching of *Garza*, as he saw it, and reduced the conviction from a Class IV felony to a Class II misdemeanor. In the State's brief, it cites and discusses the fact that by 1992 Neb. Laws, L.B. 111, the Nebraska Legislature made value an element of theft offenses, but it does not discuss the effect the change has on the holding in *Garza*. The State did not appeal from the trial court's actions. On the issue of value, the State merely asserted the evidence was sufficient.

In Ybarra's brief, he does not cite *Garza, supra*, or specifically argue that the evidence on value was insufficient and that hence the evidence was insufficient to support the convic-

tion. However, Ybarra did use *Garza* to obtain a decrease in the seriousness of the crime. Absent plain error, assignments of error not discussed in the briefs will not be addressed by an appellate court. *State v. Thieszen*, 252 Neb. 208, 560 N.W.2d 800 (1997). Plain error exists where there is error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. *State v. Woods*, 255 Neb. 755, 587 N.W.2d 122 (1998).

We conclude that the current value of property shoplifted is an element of the crime of shoplifting. We also conclude that the evidence is insufficient to prove the value of the merchandise taken. We further conclude that the absence of sufficient evidence of one of the elements of a crime to which a defendant has been convicted is something we should notice under the plain error doctrine. Therefore, we will consider the effect of the failure of the State to prove the value of the merchandise taken even though it is not argued in Ybarra's brief.

## STANDARD OF REVIEW

On review, a criminal conviction must be sustained if the evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. In determining whether the evidence is sufficient to sustain a conviction in a jury trial, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, evaluate explanations, or reweigh the evidence presented to the jury, which are within the jury's province for disposition. *State v. Arnold*, 253 Neb. 789, 572 N.W.2d 74 (1998); *State v. Becerra*, 253 Neb. 653, 573 N.W.2d 397 (1998).

A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court. *State v. Pattno*, 254 Neb. 733, 579 N.W.2d 503 (1998); *State v. Chojolan*, 253 Neb. 591, 571 N.W.2d 621 (1997).

## ANALYSIS

*Sufficiency of Evidence on Issues Other Than Value.*

Ybarra assigns the error of insufficiency of the evidence only in general terms, and he argues this assignment only in general

terms, that is, he merely states the general rules applicable to an appellate court in determining the sufficiency of the evidence to sustain the conviction. Ybarra never states or argues which element of the crime charged was not proved.

The evidence on the issue of whether Ybarra shoplifted the goods is circumstantial. However, he did go to the store with Sitting Holy and was leaving with her while she was pushing the merchandise allegedly being shoplifted. This fact, coupled with his actions and words to her when Green approached them and his explanation that the receipts were back at the register, clearly supports a finding that he was with Sitting Holy in committing the crime, if not managing it. This evidence is sufficient to establish all elements of the crime except the value of the merchandise. As previously stated, this court does not reweigh the evidence.

*Sufficiency of Evidence on Value.*

Section 28-511.01, defining theft by shoplifting, provides in part:

(1) A person commits the crime of theft by shoplifting when he or she, with the intent of appropriating merchandise to his or her own use without paying for the same or to deprive the owner of possession of such property or its retail value, in whole or in part, does any of the following:

(a) Conceals or takes possession of the goods or merchandise of any store or retail establishment;

(b) Alters the price tag or other price marking on goods or merchandise of any store or retail establishment.

Section 28-518 provides:

(2) Theft constitutes a Class IV felony when the value of the thing involved is five hundred dollars or more, but not over one thousand five hundred dollars.

. . . .

(4) Theft constitutes a Class II misdemeanor when the value of the thing involved is two hundred dollars or less.

In *State v. Garza,* 241 Neb. 256, 487 N.W.2d 551 (1992), Garza was convicted of felony shoplifting on evidence of value very similar to the evidence on value in this case. In *Garza,* the State asserted that price tags alone for items taken by Garza

established value of the property. The *Garza* court found the evidence inadequate and found Garza guilty of only the lowest class misdemeanor, because the value of the property involved was not an element of the crime but the value of the thing involved went only to the penalty.

In L.B. 111, the Legislature amended § 28-518 by adding subsection (8), which provides: "In any prosecution for theft under sections 28-509 to 28-518, value shall be an essential element of the offense that must be proved beyond a reasonable doubt."

This statute changed the holding first announced in *State v. Culver*, 233 Neb. 228, 444 N.W.2d 662 (1989), that value of property taken was not an element of the crime charged, and it also changed one of the principles upon which the decision in *Garza* was predicated, in that *Garza* used the rule in *Culver* and held that value was not an element of theft crimes. *Garza* was decided by the Supreme Court on August 14, 1992, shortly after L.B. 111 was approved by the Governor on April 15, 1992. L.B. 111 was not mentioned in *Garza*.

We have found some legislative history that sheds some light on the intended effect of L.B. 111, but not a great deal. The only legislative history found with respect to § 28-518(8) is a comment by Senator John Lindsay, stating:

> The amendment would do two things. . . . The second half of this changes a Supreme Court or corrects what happened with a Supreme Court decision and that is that right now . . . the law had previously been assumed to be that when you get charged with a . . . with a theft, one of the elements of that offense that the prosecution has to prove . . . and, remember, we're dealing with criminal statutes, so these are things that the prosecution will have the burden of proving beyond a reasonable doubt. One of the things that the court . . . that the court changed or changed whatever they assumed as the law was that value is something that had to be proven. It's clearly, I think, or the policy should be that is an element of the offense. If someone is charged with a felony, as it currently stands, since the Supreme Court decision, as it currently stands, the prosecution need not prove that the value was in excess of $300,

> even though that's what the statutes require. The statutes require that it be . . . have a value in excess of $300. Because the Supreme Court has interpreted the statutes in that direction, I believe this change is necessitated. What the second half of this amendment then would do is that it would simply require that value is an essential element of the offense that has to be proved. Basically, that part of the amendment would return us back to where, I believe, we thought we were prior to that decision.

Floor Debate, Judiciary Committee, 92d Leg., 2d Sess. 8967-68 (Feb. 13, 1992). The Legislature clearly intended to reserve the issue of value for the jury. See *In re Interest of Shea B.*, 3 Neb. App. 750, 532 N.W.2d 52 (1995) (traces history of value as element of theft crime).

The sufficiency of the evidence to support Ybarra's conviction must be tested in the light of the above law.

*Proof of Value in Theft Cases.*

■ The value to be proved concerning a theft charge is market value of the property taken at the time and place where the property was criminally appropriated. *State v. Garza*, 241 Neb. 256, 487 N.W.2d 551 (1992). Proper proof of market value in theft of personal property cases and the effect of the State's failure to prove it properly was litigated several times during the lengthy period when value was clearly an element of theft crimes. Several convictions were reversed and causes remanded for new trials because the State failed to adequately prove value.

In *Engster v. The State*, 11 Neb. 539, 10 N.W. 453 (1881), the defendant's felony conviction for receiving stolen property was reversed and the cause remanded for a new trial because the court stated there was unsatisfactory evidence of value. In *Brooks v. State*, 28 Neb. 389, 44 N.W. 436 (1889), the judgment of conviction was set aside and the cause remanded when the owner's lengthy testimony did not contain a clear opinion of value. The *Brooks* court quoted *Engster*, which stated, " 'where the value of the property must be or exceed $35 to constitute a felony, such value must be proved, like any other fact upon which a conviction depends, beyond a reasonable doubt. This is a material fact, without proof of which the prosecution must

fail.'" *Brooks*, 28 Neb. at 394, 44 N.W. at 437. In *Rooney v. State*, 51 Neb. 576, 71 N.W. 309 (1897), the testimony of the owner, the only witness on value, was held to be inadequate because his testimony did not show he knew the value, and the felony conviction was reversed and the cause remanded.

In *State v. Stowell*, 190 Neb. 615, 617, 211 N.W.2d 130, 131 (1973), a conviction for stealing a television was reversed when the evidence of value was the owner's testimony that he learned the price of sets of that "'caliber'" was between $375 and $400, that it was used merchandise, and that he presumed it to be worth $250. In reversing the defendant's conviction, the court stated:

> The value of goods which may be the subject of feloniously receiving stolen property must be $100 or more under section 28-508, R. R. S. 1943. Where the value of property is an element of the offense, the State must prove by competent evidence that the value of the property at the time and place of the alleged offense equalled or exceeded the requisite minimum value.

*Stowell*, 190 Neb. at 617, 211 N.W.2d at 131-32.

In *State v. Hayes*, 187 Neb. 325, 190 N.W.2d 621 (1971), the defendant was charged and convicted of receiving stolen property valued at $100 or upward. The evidence of value was an expert's testimony that the market value of the property was $50 wholesale and $75 retail. The owner's testimony was that it cost $225 3 years before the taking. Evidence that an insurance company had reimbursed the victim $170, without evidence as to the basis of the insurance company's reimbursement, together with the other testimony was held to be inadequate to prove a value of more than $100.

The value of articles stolen from a stock of merchandise may be established by proof of the price at which the articles and other like articles are being offered and sold at the place where the articles were stolen. *Robinson v. State*, 107 Neb. 591, 186 N.W. 977 (1922). In *Robinson*, the court held that "[a]s to the proof of value, there is no better way of showing the market value of any article than the price at which it and others of its class are being offered and sold on the market." 107 Neb. at 592, 186 N.W. at 978. However, in the case at hand, as in *State v.*

*Garza*, 241 Neb. 256, 487 N.W.2d 551 (1992), there is no evidence that the merchandise was actually sold for that value. See, also, *State v. Sexton*, 240 Neb. 466, 482 N.W.2d 567 (1992) (holding that police officer's testimony that defendant was seen dragging sack toward parking garage with tag reflecting price at which item was being bought and sold on day of offense was sufficient evidence to prove value).

■ The *Garza* court held that price tags alone do not sufficiently prove the value of the merchandise. Garza was convicted of felony shoplifting of merchandise having a value of more than $300 but less than $1,000. The price tags offered into evidence showed a total of $537. The State argued that the price tags by themselves established value for the merchandise. The *Garza* court held that "a price tag merely expresses the amount at which a seller offers an article for sale, a sum the seller hopes to obtain, and does not necessarily indicate the amount obtainable in the market through payment for the article offered for sale." 241 Neb. at 264, 487 N.W.2d at 557.

Thus, the court held that price tags on the articles stolen did not reflect current market conditions for the sale of an item and that therefore, the price tags did not support the finding that the stolen property had a value greater than $300. This holding in *Garza* has not been disturbed.

In the instant case, Whyte testified that Wal-Mart prices its items with a UPC. The UPC's assist the cashiers in ringing up the price of the merchandise. Whyte manually typed the UPC's into a register which produced a receipt listing the prices at which each item found in Ybarra's cart was being offered to Wal-Mart customers that day. As in *Garza*, this evidence merely establishes the price that the merchant is willing to sell the merchandise for to its customers, but it does not establish the price at which the merchandise was being bought and sold on November 24, 1998. The State provided no additional evidence as to value. On the issue of proof of value, the present case is not distinguishable from the price tags used in *Garza*.

Upon the basis of the above authority, we conclude that the evidence is insufficient to establish value beyond a reasonable doubt.

*Effect of Value as Element of Crime.*

■ One important consideration in *Garza, supra*, was that the court recognized that value was no longer an element of the crime charged, but merely a measure of the penalty. Since determining the penalty for a crime after conviction is clearly a function of the court as opposed to the jury under Nebraska jurisprudence, see, *Haffke v. State*, 149 Neb. 83, 30 N.W.2d 462 (1948), and *State v. Siers*, 197 Neb. 51, 248 N.W.2d 1 (1976), the Supreme Court's action in affirming the conviction and merely lowering the penalty naturally followed from a holding that value was not an element of the crime. The controlling issue in this case is the effect of the State's failure to prove value in the light of the present rule: The value of the thing involved in shoplifting and similar crimes is an element of the crime.

The specific inquiry at this point is whether the judge, rather than the jury, in a criminal case, can make a finding of what the evidence shows beyond a reasonable doubt as opposed to a finding that the evidence supports the jury's finding beyond a reasonable doubt. The *Garza* court determined the evidence supported Garza's conviction and then cited the cases which held value was not an element of the crime, but, rather, used to determine the penalty. It also stated: "[T]he evidence shows, beyond a reasonable doubt, that the property stolen by Garza had some intrinsic value that translates into nominal market value." *State v. Garza*, 241 Neb. 256, 265, 487 N.W.2d 551, 557 (1992).

■ This approach at least implies that a trial court cannot make such a finding when value is an essential element of the crime charged.

> It is well-established that where there is a conflict in the evidence it is error for the trial court to determine any question of fact involved in a criminal case. . . . [I]n the trial of an information charging a felony, the presiding judge is without lawful authority to determine an issue, or any of the questions of fact involved in the issue. That power belongs exclusively to the jury, regardless of the state of the evidence. The jury must be fully satisfied of the existence of every fact constituting an element of the crime charged, and it cannot be assumed that it is so satisfied because it ought to be.

*Siers*, 197 Neb. at 70-71, 248 N.W.2d at 12.

> They [the jurors] are the sole judges of the credibility of the witnesses and of the weight to be given to the evidence, and the court cannot assume that [the jurors] are convinced of any constituent element of guilt because they ought to be. They may entirely discredit any witness though uncontradicted, or refuse to believe all the evidence tending to establish guilt even though it is unopposed and free from conflict.

*Zediker v. State*, 106 Neb. 473, 476, 184 N.W. 80, 81 (1921).

The above propositions clearly require a holding that the conviction of Ybarra for shoplifting must be reversed. We now turn to the question of the order of this court upon remand.

*Proper Remand.*

Ybarra was charged and convicted by a jury of a felony. The trial court entered a judgment for only a Class II misdemeanor on its own motion. Under the current statutory scheme, value is an essential element of the crime of theft by unlawful taking. See § 28-518. Once value is established by conviction, the type and class of the offense are determined under the plain language of § 28-518. In determining the proper resolution of this case, we note that in most of the cases we have reviewed above where the Supreme Court found the evidence insufficient on value when value was an element of the crime, the court reversed the convictions and remanded the causes, apparently for a new trial. This result is in accord with the following principles which seem to indicate the cause should be remanded for a new trial.

"[W]here there has been a conviction, an appeal of the case and a reversal . . . the case goes back for retrial on the highest degree charged, even though [the] previous conviction was on a lesser degree." *State v. Hutter*, 145 Neb. 798, 805, 18 N.W.2d 203, 208 (1945).

A conviction of a lesser offense than that for which the accused was informed against is not a bar to a prosecution for a greater offense if the accused is granted a new trial. See *Clarence v. State*, 89 Neb. 762, 132 N.W. 395 (1911).

The imposition of a particular sentence usually is not regarded as an "acquittal" of a more severe sentence that could

have been imposed. *Bullington v. Missouri*, 451 U.S. 430, 101 S. Ct. 1852, 68 L. Ed. 2d 270 (1981). Thus, as a general matter, the Double Jeopardy Clause imposes no absolute prohibition of a harsher sentence at retrial after a defendant has succeeded in having an original conviction set aside. *Id.* However, the above-mentioned principles are not applicable to the present case because of another aspect of Double Jeopardy.

▉ The U.S. Supreme Court has held that where there has been insufficient evidence presented to convict a defendant in a first trial, the Double Jeopardy Clause "forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." *Burks v. United States*, 437 U.S. 1, 11, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978); *State v. Bostwick*, 222 Neb. 631, 385 N.W.2d 906 (1986).

Thus, the Double Jeopardy Clause bars retrial if the reversal of a conviction is necessitated because the evidence was legally insufficient to sustain the conviction. *Burks v. United States, supra; Palmer v. Grammer*, 863 F.2d 588 (8th Cir. 1988), *appeal after remand, Palmer v. Clarke*, 961 F.2d 771 (8th Cir. 1992); *State v. Lenz*, 227 Neb. 692, 419 N.W.2d 670 (1988). See, *State v. Lee*, 227 Neb. 277, 417 N.W.2d 26 (1987); *State v. Noll*, 3 Neb. App. 410, 527 N.W.2d 644 (1995).

In the case before us, the judge did not have the authority to reduce the conviction from a Class IV felony to a Class II misdemeanor based upon the insufficiency of evidence as to the value of the goods taken. The State failed to produce sufficient evidence to prove value, an essential element of theft by shoplifting property for more than $500 but less than $1,500. Accordingly, we reverse, and remand this cause with directions to dismiss.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.

SIEVERS, Judge, concurring.

My colleagues rely upon the Supreme Court's opinion in *State v. Garza*, 241 Neb. 256, 487 N.W.2d 551 (1992). With all due respect to the members of the Supreme Court who wrote and adopted *Garza* and my colleagues here who rely upon it, I believe that if *Garza* were now reconsidered, a different result

would occur. I believe our decision here is at odds with the language of our shoplifting statute, § 28-511.01.

The statute makes it a crime to deprive the owner of the possession of the property *"or its retail value."* (Emphasis supplied.) § 28-511.01(1). I believe the emphasis must be on "retail value." Deprivation of retail value can occur by out-and-out theft or by more subtle means which are criminalized in § 28-511.01, including altering the price tag, interchanging price tags with other merchandise, and causing a sales recording device, e.g., scanner, to reflect less than the retail price of the merchandise. The *Garza* dissent addresses the meaning of the words "retail value," the deprivation of which makes up the crime of shoplifting. I believe that proof of the price at which a retail merchant offers an item for sale does in fact establish value, an essential statutory element of the crime of shoplifting. The statute speaks extensively of price tags and criminalizes conduct involving altered price tags. Thus, establishing the price, via a price tag, at which an item is offered for sale at the time of its theft or deprivation is sufficient to prove the element of value. See, *Nix v. State*, 604 So. 2d 920, 922 (Fla. App. 1992) (trial judge is authorized to select either replacement cost or "selling price" as fair market value of goods stolen); *State v. Carroll*, 186 Neb. 148, 181 N.W.2d 436 (1970) (holding that fair and reasonable market value of stolen property may be established in larceny prosecution by evidence of wholesale or retail values or both and if both are sufficient to establish grand larceny, then it is immaterial whether computation of market value is by reference to wholesale or retail prices); *State v. King*, 164 N.J. Super. 330, 336 n.1, 396 A.2d 354, 356 n.1 (1978) (shoplifting statute using term "full retail value," defined as " 'the merchant's stated or advertised price of the merchandise' ").

In his dissent in *Garza, supra,* Justice Boslaugh asserted that the price at which the retail merchant offers shoplifted goods for sale is sufficient evidence of value. I recognize that it is not difficult for the prosecution to ask what probably is only one additional question of the merchant required by the majority in *Garza.* That question would address whether the merchant had sold the same or similar goods for the same price as the price

listed on the stolen goods. Nonetheless, I do not believe that the shoplifting statute requires the reversal of a conviction because the only evidence of value is its price tags or Universal Product Codes (as are now nearly universally used in this age of scanners).

The statutory language of § 28-511.01 allows proof of the element of value by the price tag or UPC of the shoplifted merchandise, because that is the "retail value." If the issue were reconsidered today by the Nebraska Supreme Court, perhaps it would so hold. However, absent such reconsideration, I am bound by principles of stare decisis to follow *Garza*. Thus, while I would affirm, I am bound under *Garza* to vote to reverse. Therefore, I concur in the result reached by my colleagues.