STATE OF NEBRASKA, APPELLEE, V.
MITZI S. MOHR, APPELLANT.
632 N.W. 2d 382

Filed August 14, 2001.   No. A-00-935.

Gerard A. Piccolo, Hall County Public Defender, for appellant.

Don Stenberg, Attorney General, and Scott G. Gunem for appellee.

Irwin, Chief Judge, and Sievers and Carlson, Judges.

Per Curiam.

A jury convicted Mitzi S. Mohr of theft by shoplifting, which was a Class IV felony due to her prior theft convictions. The district court for Hall County sentenced her to 1 to 2 years' imprisonment. The issue is whether the State has proved value of the shoplifted merchandise so that there is sufficient evidence to sustain the conviction.

## BACKGROUND

Around 4:45 p.m. on January 1, 2000, Thad Nobles, the loss-prevention manager at the Sears department store in the Conestoga Mall, Grand Island, Nebraska, observed Mohr via security video cameras place two dresses under her coat and exit the store. A copy of the videotape taken by the security camera shows Mohr furtively take two dresses off their hangers and, after pausing with her back to the camera, exit Sears with a male cohort. Nobles testified that he ran after Mohr and her companion in an attempt to stop them and bring them back to Sears. The couple ignored Nobles' requests to return to Sears and continued to walk away, whereupon, he grabbed onto the backs of their coats. According to Nobles, Mohr threw the dresses onto the floor, and the couple "wiggled out of their coats" and "took off running," eventually exiting the mall. Nobles pursued the couple

outside and telephoned the police. After a police officer arrived at the mall, Nobles and the officer returned to Sears, where Nobles showed the officer the videotape of Mohr's theft. Upon returning to Sears, Nobles learned that a mall patron had returned the two stolen dresses and the fleeing couple's coats to Sears. According to Nobles, he photographed the stolen dresses and "ran them through the register so that [he] could get a price and item number for the officer." Mohr was apprehended several months later on a bench warrant for failing to appear at her arraignment on this charge.

Nobles was the only witness to testify concerning the value of the two stolen dresses. He stated that he took the dresses to a sales associate and asked him or her to return the dresses to the sales floor. When asked whether he knew what had happened to the dresses after taking them to the sales associate, he stated, "Not for sure, no." Later on in his testimony, Nobles stated, "As far as I know [the stolen dresses] have been sold." Over Mohr's relevance, foundation, hearsay, and best evidence objections, Nobles testified that the "price tags" on the two dresses showed that Sears was selling one of them for $58.50 and the other for $39.60. He stated that he looked at the clothes racks from which the two stolen dresses had come the day the theft occurred and observed that the same or similar dresses on those racks were "offered at the same or similar price" as the two stolen dresses. Additionally, Nobles testified that he was familiar with how Sears sells its merchandise because his job requires that he be "familiar with each department and how everything is merchandised." More specifically, he stated that the two stolen dresses came out of the "junior department," wherein "[e]ach rack [of clothes] has a similar price point so that it's easier for the customers to shop, so we don't have like $20 dresses on the same rack as the $60 dresses unless they are clearance." Nobles did not testify to the selling price of the dresses stolen or about sales of similar dresses.

## ASSIGNMENTS OF ERROR

Mohr asserts that the county court erred in (1) allowing Nobles to testify concerning the price tags on the stolen dresses, (2) not defining or instructing the jury on value, (3) determining this was

a third-offense shoplifting conviction, and (4) not granting her motion for directed verdict made at the close of the evidence.

## STANDARD OF REVIEW

In all proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by such rules, not judicial discretion, except in those instances under the rules when judicial discretion is a factor involved in the admissibility of evidence. *State v. Rieger*, 260 Neb. 519, 618 N.W.2d 619 (2000). When judicial discretion is not a factor involved in assessing admissibility of evidence, the court's application of the Nebraska Evidence Rules will be upheld unless clearly erroneous. *Id.*

Whether a trial court should grant a motion for directed verdict at the close of the State's case is a question of law, regarding which an appellate court must reach a conclusion independent of the determination reached by the district court. *State v. Johnson*, 9 Neb. App. 140, 609 N.W.2d 48 (2000).

## ANALYSIS

We begin with an overview of the State's burden of proof on the issue of value. In a theft prosecution, the value of the property stolen is an essential element of the offense that must be proved beyond a reasonable doubt. Neb. Rev. Stat. § 28-518(8) (Reissue 1995); *State v. Ybarra*, 9 Neb. App. 230, 609 N.W.2d 696 (2000). Value is defined as the market value at the time and place where the property was criminally appropriated. *Id.* The value of articles stolen from a stock of merchandise may be established by proof of the price at which the articles and other like articles are being offered and sold at the place where the articles were stolen. *Id.* In addition, market value of articles at the time and place of taking may be established by direct and circumstantial evidence. See *State v. Weik*, 206 Neb. 217, 292 N.W.2d 289 (1980).

*May Nobles Testify to Sears' Prices for Stolen Dresses?*

Mohr asserts that Nobles, the loss-prevention manager, should not have been allowed to testify to the sales prices printed on the price tags on the stolen dresses on three different evidentiary grounds: relevance, hearsay, and best evidence. Mohr's "best evidence" objection disposes of this assignment of error. Mohr argues that the State had to produce either the price

tags or a Sears receipt showing the prices of the dresses in order to comply with the best evidence rule.

The best evidence rule, also known as the original document rule, Neb. Rev. Stat. § 27-1002 (Reissue 1995), states that the original writing, recording, or photograph is required to prove the content of that writing, recording, or photograph. The best evidence rule does not set up a hierarchy for admissibility of evidence, but applies when a party seeks to prove material contents of a writing, recording, or photograph. *State v. Kula*, 260 Neb. 183, 616 N.W.2d 313 (2000). The purpose of the best evidence rule is to prevent fraud, inaccuracy, mistake, or mistransmission of critical facts contained in a writing, recording, or photograph when its contents are an issue in a proceeding. *Id.*

Judicial discretion is not a factor under the best evidence rule because the original writing, recording, or photograph "is required" to prove the content thereof. § 27-1002. A "writing" for purposes of the best evidence rule includes "numbers . . . set down by handwriting, typewriting, printing" and "[i]f data are stored in a computer or similar device, any printout or other output readable by sight, shown to reflect the data accurately, is an original." Neb. Rev. Stat. § 27-1001 (Reissue 1995). Clearly, the price tags affixed to the dresses taken by Mohr constitute original writings. The price tags were not offered into evidence. Thus, the question is whether the State was attempting to prove the content of the price tags such that the originals were required, making Nobles' testimony inadmissible.

The prosecutor asked Nobles whether he "recall[ed] looking at the price tag[s]" on the dresses and whether he recalled "what [they] said." Nobles recalled looking at the price tags but could not remember "what [the price tags] said." After refreshing his recollection with a "piece of paper that ha[d] everything itemized," the prosecutor again asked whether Nobles recalled what the "price tag of the red dress" was and "what the price tag of the maroon dress depicted in Exhibit 4 [picture of the stolen dresses] was." Mohr objected on the ground of best evidence to these questions. The trial court overruled her objections, and Nobles testified that the price tag of the red dress "was 58.50" and that the price of the maroon dress "was $39.60." The State maintains that it is unclear as to how Nobles arrived at these prices, that Mohr is

merely speculating as to what information Nobles relied upon in arriving at those prices, and that we should not speculate as to the foundation for Nobles' testimony concerning the dresses' prices. However, we think that the key is what questions were asked.

The prosecutor did not ask "How much did the dresses cost?" or "What were the dresses selling for?" or "Based on your knowledge and experience with Sears retail practices, what were the prices?" but, instead, asked Nobles what the price tags "said." Neb. Rev. Stat. § 27-1004 (Reissue 1995), which carves out exceptions to the best evidence rule, makes exceptions for specific instances of unavailability, such as where the original has been lost or destroyed or cannot be obtained by judicial means, neither of which apply here, or the original is not closely related to a controlling issue. *State v. Kula, supra.* Proof of value, which is best done through proof of the price at which an item is offered and sold, *State. v. Ybarra*, 9 Neb. App. 230, 609 N.W.2d 696 (2000), was a "controlling issue" in the State's shoplifting case against Mohr. Thus, the exceptions from § 27-1004 are inapplicable. Nobles was asked to testify to the content of a writing instead of the price at which the dresses or similar ones were offered and sold. Thus, the original writing was required instead of Nobles' testimony of the price tags' contents. Consequently, the district court erred in not sustaining Mohr's objection on the ground of best evidence. See *Robinson v. Com.*, 258 Va. 3, 10, 516 S.E.2d 475, 479 (1999) (court recognizes hearsay exception in shoplifting cases permitting admission of price tags into evidence "or, in substitution, testimony concerning the amounts shown on such tags *when . . . there is no objection to such testimony on best evidence grounds*" (emphasis supplied)). See, also, *State v. White*, 37 Conn. Supp. 796, 802, 437 A.2d 145, 149 (1981) (store security guard should not have been allowed to give "opinion" as to value when based solely on figures stated on price tags because "a witness who testifies as to value must be qualified to do so on the basis of his own personal knowledge or experience; he may not merely transmit information which he receives from outside sources in the field").

The next question is whether Nobles' erroneously admitted testimony was harmless error. See *State v. Kula*, 260 Neb. 183, 616 N.W.2d 313 (2000). In a jury trial of a criminal case,

an erroneous evidentiary ruling results in prejudice to a defendant unless the State demonstrates that the error was harmless beyond a reasonable doubt. *State v. Jackson*, 258 Neb. 24, 601 N.W.2d 741 (1999).

Neither the State nor Mohr has addressed the "harmlessness" question directly. However, we see Mohr's assignment of error that the trial court erred in overruling her motion for a directed verdict at the close of all the evidence as the functional equivalent of arguing that the error was not harmless. As to the effect of the error, Mohr relies on *State v. Ybarra, supra*, where we reversed a shoplifting conviction, recognizing that price tags alone do not sufficiently prove value of merchandise, an essential element in a theft conviction. Certainly, if Nobles' testimony as to what the price tags "said" is the only evidence of the dresses' value, then the erroneous admission of that evidence is not harmless beyond a reasonable doubt because the State's evidence would be insufficient as a matter of law. The inquiry becomes whether the district court should have granted Mohr's motion for directed verdict made at the close of all the evidence because of the State's failure to adduce evidence of the dresses' value.

In *State v. Johnson*, 9 Neb. App. 140, 145, 609 N.W.2d 48, 53 (2000), we stated:

A directed verdict in a criminal case is proper only when there is a complete failure of evidence to establish an essential element of the crime charged or the evidence is so doubtful in character and lacking probative value, that a finding of guilt based on such evidence cannot be sustained.

A conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *Id.* Accordingly, we shall consider the sufficiency of the State's evidence in absence of Nobles' testimony about the contents of the price tags, which takes us back to *State v. Ybarra*, 9 Neb. App. 230, 609 N.W.2d 696 (2000).

The *Ybarra* court recognized that value had become an essential element of the crime of theft as a result of legislative amendment to § 28-518. Therefore, we held that the fact finder had to determine whether value was proved beyond a reasonable doubt in theft cases. In *State v. Garza*, 241 Neb. 256, 487 N.W.2d 551

(1992), the Supreme Court held that value is established by evidence concerning the price at which property identical or reasonably similar to the property stolen is offered for sale *and sold* in proximity to the site of the theft. *Ybarra* followed *Garza*, and we said that " '[a]s to the proof of value, there is no better way of showing the market value of any article than the price at which it and others of its class are being offered *and sold* on the market.' " (Emphasis supplied.) *Ybarra*, 9 Neb. App. at 239, 609 N.W.2d at 703.

The seriousness of a shoplifting offense (and the corresponding seriousness of the punishment) depends upon the value of the merchandise shoplifted. See § 28-518. For instance, while theft constitutes a Class I misdemeanor when the value of the merchandise is between $200 and $500, theft constitutes only a Class II misdemeanor when the value of the merchandise is $200 or less. § 28-518(3) and (4). Moreover, reflecting the charge against Mohr, a third theft conviction of $200 or less is "kicked up" from a Class II misdemeanor to a Class IV felony. § 28-518(6). In other words, a third misdemeanor theft offense can result in a felony charge, and thus, the essential elements are those required of misdemeanor theft, plus the existence of the prior convictions. Class II misdemeanor theft requires proof of value in the amount of "two hundred dollars *or less*." (Emphasis supplied.) § 28-518(4).

Thus, unlike a felony theft offense based on the value of the property, in which case proof of a threshold value is required, a felony theft offense based on prior misdemeanor theft convictions does not require proof of a threshold value because the underlying offense, misdemeanor theft, requires only proof that the thing has value, whether it be $1 or $100. In other words, the theft statute requires proof of a threshold amount of value only when the State is pursuing a more serious penalty than the "default" Class II misdemeanor, where the property shoplifted has value of $200 or less.

Here, the State's information alleged that Mohr "took or exercised control over movable property" without specifying a certain amount for value. Therefore, putting aside the allegations in the information of Mohr's prior theft convictions, the State only charged Mohr with Class II misdemeanor shoplifting. By

including the allegations of Mohr's prior shoplifting convictions, the State charged Mohr with a Class IV felony.

> When an indictment does not state the value of the property stolen or if the value is disputed, an instruction should be requested to the effect that the jury must determine by its verdict whether the value did or did not exceed the statutory threshold; otherwise, the judge will sentence as if the value did not exceed the threshold.

50 Am. Jur. 2d *Larceny* § 50 at 60-61 (1995). See, also, *State v. Bevelle*, 527 S.W.2d 657 (Mo. App. 1975) (specific value of property shoplifted is not important when felony offense shoplifting is based upon three or more prior theft convictions).

We are mindful that value is an essential element in all theft prosecutions and that theft of anything with value of under $200 is a crime. Obviously, if an item has value, even if not a specific dollar amount, it is more valuable than if it had no value. While proof of "some" value would be insufficient to sustain a shoplifting conviction of between $200 and $500, proof of "some" value or "intrinsic value" is all that is necessary to establish the element of value in a shoplifting prosecution for a Class II misdemeanor, that is, a value of under $200. See, § 28-518(4); *State v. Garza*, 241 Neb. 256, 487 N.W.2d 551 (1992); *Robinson v. Com.*, 258 Va. 3, 516 S.E.2d 475 (1999) (proof that article has some value is sufficient for conviction for petit larceny, but where value of thing stolen determines grade of offense, value must be alleged and Commonwealth must prove value to be statutory amount); 31A C.J.S. *Evidence* § 227 at 439 (1996)("[p]roof of value, whether intrinsic or as regulated by the 'market,' requires a relaxation of strict rules of evidence and the use of such probative methods as are available"). Relying on this notion of the "intrinsic value" of merchandise, the Supreme Court upheld a shoplifting conviction in *State v. Garza, supra*, despite the State's failure to prove that the shoplifted merchandise had a threshold value to sustain felony offense shoplifting.

In *Garza*, the defendant shoplifted two jackets and two dresses from a Dillard's department store. Garza was charged with felony shoplifting because the State alleged that the value of the merchandise was between $300 and $1,000. The only evidence of value was the price tags on the clothing and the price asked by

Dillard's for that clothing. Because there was no evidence of the price at which customers were buying the stolen goods or similar clothing, the court concluded that there was insufficient evidence supporting the State's allegation of value between $300 and $1,000. While the evidence was insufficient to support felony theft, the evidence did support misdemeanor theft: "However, the evidence shows, beyond a reasonable doubt, that the property stolen by Garza had some intrinsic value that translates into nominal market value, notwithstanding the absence of evidence establishing a specific value for the stolen property." *Garza*, 241 Neb. at 265, 487 N.W.2d at 557-558. The *Garza* court did not define "intrinsic value" of property. California courts have upheld larceny convictions based on the intrinsic value of property. See *People v. Franco*, 4 Cal. App. 3d 535, 542, 84 Cal. Rptr. 513, 518 (1970), and cases cited therein (where defendant claimed that cigarette carton he shoplifted contained no cigarettes, and where jury was instructed that property need have only "any intrinsic value," court affirmed larceny conviction holding that "[i]n order that property may be the subject of larceny, it is necessary only that it possess some intrinsic value, however slight"). See, also, 50 Am. Jur. 2d *Larceny* § 62 at 72-73 (1995) ("[i]t is not essential that the object have a market value; the only requirement is that there is some actual or intrinsic value to the article, and even a[n] object that is illegal to sell or to use for certain purposes, may be the subject of a larceny. The value need not be great, although the value of the object may be necessary to fix the degree of the crime").

In *State v. Ybarra*, 9 Neb. App. 230, 609 N.W.2d 696 (2000), we acknowledged the gloss of "intrinsic value" in *State v. Garza, supra*, but declined to find that a grocery cart full of merchandise from Wal-Mart had intrinsic value, because value had become an essential element of the crime as a result of the post-*Garza* legislative amendment to § 28-518. The court's use of intrinsic value in *Garza* was possible because value was not a statutory element of a theft offense at the time. Because value had since become an element, in *Ybarra*, we held that only the jury, and not the trial judge, was able to find that the State's alleged value of $737 was proved beyond a reasonable doubt, and we did not allow the trial judge to reduce the conviction to

a Class II misdemeanor on the ground that as an essential element of the crime, whether the shoplifted items had value had to be determined by the jury.

Admittedly, we have a rather similar situation here where a jury has convicted Mohr of shoplifting something of value, but there is insufficient evidence of a specific value. But, unlike the defendant in *Ybarra*, Mohr was not charged with shoplifting something with a specific value (in *Ybarra*, the charge was under § 25-518(2), $500 to $1,500). Therefore, here the jury need only have found that the dresses Mohr took had some value. In *State v. Garza*, 241 Neb. 256, 487 N.W.2d 551 (1992), the court recognized that property can have intrinsic value. While there is insufficient proof of market value in the instant case, the evidence shows the dresses had intrinsic value. The instructions to the jury required that they find, as an element, that "the property has value." If there is any evidence which will sustain a finding for the party against whom a motion for directed verdict is made, the case may not be decided as a matter of law. *State v. Johnson*, 9 Neb. App. 140, 609 N.W.2d 48 (2000). There is evidence that the dresses had value apart from the flawed price tag evidence. There was testimony that they were offered for sale in the Sears junior department and came from a rack with similar merchandise, that they were returned to the sales rack, and that similarly priced merchandise is placed together on racks for ease of access by customers. Such evidence allows a reasonable inference that the dresses had "intrinsic value," as opposed to being worthless, as they were items offered for sale to the public. And the fact that Sears maintained security over the dresses, and pursued one who took them without payment, allows the inference that they had some value—albeit, on this record, we cannot know exactly what their market value was. But, it was only necessary that the State prove that they had a value of $200 or less, which means just that they had "value." When we view the evidence most favorably to the State, remembering that the unchallenged instructions to the jury properly required only a finding that the goods had "value," we find that there is circumstantial evidence to sustain the conviction.

AFFIRMED.

SIEVERS, Judge, concurring.

While I believe that the majority opinion completely sets forth the applicable law and reaches the right result, I wish to make it clear that I hold to my view expressed in my concurrence in *State v. Ybarra*, 9 Neb. App. 230, 609 N.W.2d 696 (2000), that price tags prove "retail value" which is sufficient proof of value in a theft case. But, a specific amount need not be proved here, and thus the evidence is sufficient.

IRWIN, Chief Judge, joins in this concurrence.