STATE OF NEBRASKA, APPELLEE, V. DAVID W. RIEGER, ALSO KNOWN AS DAVID W. RIEGER, JR., APPELLANT.

618 N.W.2d 619

Filed October 6, 2000.    No. S-00-009.

James J. Regan for appellant.

Don Stenberg, Attorney General, and Marilyn B. Hutchinson for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

David W. Rieger appealed from his conviction and sentence on charges of robbery and being a habitual criminal. Due to the pendency of an appeal from the denial of Rieger's motion for discharge, the Nebraska Court of Appeals vacated his sentence of 20 to 40 years' imprisonment, dismissed the appeal, and remanded the cause for resentencing. *State v. Rieger*, 8 Neb. App. 20, 588 N.W.2d 206 (1999). Sentencing by a different judge resulted in Rieger's receiving the same sentence of 20 to 40 years' imprisonment. Rieger timely appeals.

## SCOPE OF REVIEW

On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by

the court below. *State v. Bottolfson*, 259 Neb. 470, 610 N.W.2d 378 (2000).

In a jury trial of a criminal case, an erroneous evidentiary ruling results in prejudice to a defendant unless the State demonstrates that the error was harmless beyond a reasonable doubt. *State v. Kinser*, 259 Neb. 251, 609 N.W.2d 322 (2000).

Sentences within statutory limits will be disturbed by an appellate court only if the sentences complained of were an abuse of discretion. *State v. Abbink, ante* p. 211, 616 N.W.2d 8 (2000).

## FACTS

On July 7, 1995, at 4:19 p.m., Tamara Christensen, a clerk at Baker's Supermarket, was working behind the customer service counter when a man wearing blue jeans, a blue hooded sweatshirt, and sunglasses robbed the store. Christensen described the man as being 6 feet tall and weighing 200 pounds. She stated that he was between 25 and 35 years of age and had dark hair. When Rieger's presentence investigation report was prepared, he was 6 feet 1 inch tall and weighed 225 pounds. He had black hair and was 34 years old.

The robber demanded that Christensen give him all the large bills, and as he looked down at one of his hands in his pocket, he asked Christensen, "Do you see this[?]" He then told her that if she did not move fast, someone was going to get hurt. Christensen understood this to be an insinuation that he had a weapon in his pocket. As she was getting the money, the man told her to move faster and called her a "bitch."

Christensen gave the man between $1,000 and $3,000 in $10 and $20 bills. The man then ran out of the store. Ben Piper, a carryout clerk who was in the parking lot at the time of the robbery, testified that a person wearing a dark sweatshirt with a hood ran past him and got into a white van. The driver then spun the tires and took off. Piper described the vehicle as a "newer version" white van with a third brake light and no windows on the back or sides.

At the time of the robbery, Rieger was employed as a delivery driver and used a late model white cargo van with a third brake light for his deliveries. At approximately 4 p.m. on the day of the robbery, Rieger had not yet returned the van to his

employer even though he was supposed to have returned it between 2 and 2:30 p.m. His manager was concerned enough to call the police, who arrived at Rieger's place of employment 20 minutes later. While the police were talking to Rieger's manager, Rieger called and told the manager that he would return the van after the police had left. Rieger said he was nervous about their presence.

At trial, Bruce Ferrell, a police officer who had driven in the area several times during the investigation, testified that the driving time between Baker's Supermarket and Rieger's place of employment was no more than 10 minutes.

DeAnne Pagett, Rieger's sister, testified that Rieger had lived with her for 1 month until a week prior to the day of the robbery. Pagett had given Rieger a blue hooded sweatshirt about 2 weeks prior to the date of the robbery. On the evening of the robbery, Rieger repaid $100 to Pagett in $20 bills that he pulled from a roll of bills in his pocket. Rieger told her the money was from his paycheck from a construction job. Following the night of the robbery, Pagett did not see Rieger again for over 1 year. Pagett stated that the robber who appeared on the store's videotape looked similar to Rieger.

Prior to trial, Christensen and Mary Wilson, who was standing in line behind the robber at Baker's Supermarket, were each shown a photographic array that included a photograph of Rieger. Christensen identified Rieger as being the "closest to the suspect," and she was reasonably sure that he was the robber. Wilson, who had seen the robber only at an angle and did not see his face straight on, claimed that another person in the lineup appeared to be closer to the robber but stated that Rieger had similar skin tone and hair. However, Christensen and Wilson both identified Rieger in court as being the person who had committed the robbery.

Rieger did not testify, nor did he offer any evidence or testimony in his defense. Rieger was subsequently convicted of robbery and sentenced to 20 to 40 years' imprisonment.

## ASSIGNMENTS OF ERROR

Rieger assigns five errors: (1) The trial court erred in allowing Ferrell's testimony regarding the out-of-court identification

by Christensen, (2) the court erred in allowing Officer Brian Nelson's testimony regarding an out-of-court identification by Wilson, (3) the court erred in admitting evidence concerning the drive time between the location of the robbery and Rieger's place of employment, (4) the court erred in determining there was sufficient evidence to submit the case to the jury and to support a conviction, and (5) the sentence imposed was an abuse of discretion in that it was excessive and based on information not properly before the court.

## ANALYSIS

Rieger first argues that the trial court erred in allowing over his foundational objection Ferrell's testimony regarding the out-of-court photographic identification by Christensen. Rieger claims that the photographic array was not in evidence at the time of the testimony and that Ferrell did not recall the name of the witness about whom he was testifying. Rieger appears to argue that the admission of the photographic array was a condition precedent to the admissibility of Ferrell's testimony regarding the out-of-court photographic identification.

In all proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by such rules, not judicial discretion, except in those instances under the rules when judicial discretion is a factor involved in the admissibility of evidence. *State v. Garner, ante* p. 41, 614 N.W.2d 319 (2000). When judicial discretion is not a factor involved in assessing admissibility, the court's application of the Nebraska Evidence Rules will be upheld unless clearly erroneous. *State v. Canbaz,* 259 Neb. 583, 611 N.W.2d 395 (2000).

It was not necessary for the State to introduce the actual photographic array in evidence before Ferrell could testify regarding the out-of-court photographic identification. It is not the admissibility of the photographic array that is at issue, but, rather, the admissibility of Ferrell's testimony regarding the identification made from the array that is being attacked.

Ferrell testified that he was involved in the investigation of the robbery, interviewed witnesses at Baker's Supermarket, and assisted Nelson in showing the photographic array to one of the witnesses. Ferrell could not recall the name of the witness, and

at the time of his testimony, the photographic array had not been admitted in evidence. Over Rieger's foundational objection that Ferrell could not recall the name of the witness and the details of what was said during the identification process, Ferrell was allowed to testify that the unidentified witness picked Rieger's photograph from the array as being that of the robber.

The trial court initially sustained Rieger's foundational objection as to how the photographic array was prepared. Following this objection, Ferrell described the array and how it was administered. He stated that Rieger's photograph was included in the array and that the clerk to whom it was shown made the identification. When Ferrell was again asked whose photograph the clerk had identified, the same objection was made and overruled. Ferrell then answered: "It was photograph number three, which was the photograph of David Rieger."

A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he or she has personal knowledge of the matter. Neb. Rev. Stat. § 27-602 (Reissue 1995). Thus, it was not necessary for the State to offer the photographic array in evidence or for Ferrell to name the clerk who had pointed out Rieger as the robber. Ferrell had personal knowledge because of his participation in the photographic identification, and he testified that he assisted Nelson in showing the array to one of the witnesses, whom Ferrell identified as a clerk at the store. Ferrell testified about that which he had personal knowledge, i.e., the fact that during the photographic identification at which Ferrell was present, the clerk identified Rieger as the robber. Rieger's first assignment of error is without merit.

Next, Rieger argues that the trial court erred in allowing Nelson's testimony regarding the out-of-court identification by Wilson over Rieger's hearsay objection. The State concedes that this testimony was hearsay and that, therefore, it was error for the trial court to admit it. However, the State argues that such error was harmless.

In *State v. Salamon*, 241 Neb. 878, 491 N.W.2d 690 (1992), we held that testimony by an officer concerning the victim's out-of-court assertion that the defendant was the robber was hearsay and erroneously admitted. The issue was whether the admission

of the hearsay was prejudicial to the defendant. We held that it was harmless error because the victim identified the defendant in court, there was corroboration of the victim's account, the defendant's accomplice identified the defendant as her accomplice in robbing the victim, and the remaining evidence of the defendant's guilt was overwhelming.

In a jury trial of a criminal case, an erroneous evidentiary ruling results in prejudice to a defendant unless the State demonstrates that the error was harmless beyond a reasonable doubt. *State v. Kinser*, 259 Neb. 251, 609 N.W.2d 322 (2000). Harmless error exists in a jury trial of a criminal case when the court makes an erroneous evidentiary ruling which, on review of the entire record, did not materially influence the jury in a verdict adverse to the defendant. *State v. Kirksey*, 254 Neb. 162, 575 N.W.2d 377 (1998).

Nelson participated in the investigation of the robbery by interviewing Christensen about what had happened and asking her for a description of the robber. After Nelson was given the name of a suspect, he prepared a photographic array consisting of photographs of persons who were similar in appearance. That photographic array was received without objection.

Rieger was pictured in photograph No. 3 of the photographic array. Nelson showed the array to Christensen at Baker's Supermarket and also showed it to Wilson at her residence. When Nelson was asked what Wilson said upon looking at the photographs, Rieger objected. Rieger's hearsay objection was overruled, and Nelson then testified: "She looked at all six photographs and she said that the person in number six appeared to be close to the suspect, however that was not him, but then she said the person in number three had the skin tone and hair that were similar to the robber." Nelson also testified based on his history of showing photographic arrays to witnesses that there are times when people do not pick a person out of a photographic array but later make an in-person identification.

At trial, Wilson testified that while she was standing in line at the customer service counter at Baker's Supermarket on July 7, 1995, a man approached her at an angle and tried to move in front of her. She saw the right side of his face as she let him get in front of her. She stayed right behind him, about 1½ feet away

for 1 or 2 minutes. When she realized something was happening with the clerk, she approached the counter to check things out, but when the robber looked back at her, she backed off. Wilson described the man as tall and dark-haired. He was wearing sunglasses, a royal blue zip-up thermal jacket, and pants. She thought it was odd that the man was wearing a jacket because the temperature was in the 90's. At trial, she identified Rieger as the person in front of her at Baker's Supermarket on July 7. Rieger made no objection to this testimony.

In determining whether reasonable doubt exists in the context of whether the erroneously admitted evidence is harmless, we have considered whether the evidence is cumulative. Where the evidence is cumulative and there is other competent evidence to support the conviction, the improper admission or exclusion of evidence is harmless beyond a reasonable doubt. *State v. Kinser*, 259 Neb. 251, 609 N.W.2d 322 (2000). The erroneous admission of evidence which is not cumulative may constitute harmless error beyond a reasonable doubt when the defendant's conviction is supported by overwhelming evidence which has been properly admitted or admitted without objection. *State v. Merrill*, 252 Neb. 736, 566 N.W.2d 742 (1997).

In this case, Nelson's testimony regarding Wilson's out-of-court identification of Rieger was cumulative. Christensen had previously identified Rieger as the person who had committed the robbery. Thus, there was other competent evidence to support the conviction. See *State v. Kinser, supra*.

We also consider whether there was other overwhelming evidence that supported the conviction. In *State v. Salamon*, 241 Neb. 878, 491 N.W.2d 690 (1992), we held that the police officer's hearsay testimony regarding the photographic and lineup identifications made by a robbery victim was harmless error because the conviction was supported by other overwhelming evidence.

At trial, both Christensen and Wilson identified Rieger as the robber. Piper, the carryout clerk, testified that at the time of the robbery, he saw a person in the parking lot wearing a dark hooded sweatshirt who ran past him and drove off in a white van with a third brake light. The van that Rieger was driving at the time of the robbery was white and had a third brake light. Rieger

had not returned his delivery van to his employer prior to the time of the robbery, and Rieger called to tell his manager that he was nervous about the presence of the police. Pagett, Rieger's sister, had given him a blue hooded sweatshirt prior to the robbery, and after the robbery, Rieger gave Pagett $100 in $20 bills taken from a large wad of bills he had in his pocket. Pagett also stated that the robber in the videotape looked similar to Rieger.

We conclude that the State has established that the admission of Nelson's testimony was harmless beyond a reasonable doubt in that such evidence did not materially influence the jury in its verdict against Rieger. The testimony was cumulative, and the conviction was supported by other overwhelming evidence which was properly admitted.

Rieger next claims the trial court erred in allowing testimony concerning the drive time between the location of the robbery and that of Rieger's employer over his foundational objection. Section 27-602 requires that there be sufficient evidence to support a finding that Ferrell had personal knowledge of the drive time between these two locations. Ferrell was asked whether he had driven the area between the location of the robbery and Rieger's employer. Ferrell answered "[y]es," and after the foundational objection was overruled, he stated that it took no more than 10 minutes to make the drive. Rieger contends that the trial court should have required Ferrell to detail the specific activities that allowed him to form this opinion, with the requirement that there be some adequate temporal connection to the date of the crime and the date Ferrell performed the acts necessary to reach his conclusion.

The foundation offered by the State was that Ferrell had driven in this particular area. In response to questioning by defense counsel, Ferrell admitted that he had not driven in the area in question until about 1 week after the robbery. There was no testimony as to the nature of the traffic or other relevant matters that were different at that time compared to the date and time of the robbery.

Neb. Rev. Stat. § 27-104(1) (Reissue 1995) provides that preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the trial judge. Therefore, the

determination by the trial court as to whether there was sufficient foundation for Ferrell's testimony was a question of law which must be examined by this court independent of the conclusion reached by the trial court. See *State v. Smith*, 238 Neb. 111, 469 N.W.2d 146 (1991).

Ferrell testified that Rieger's employer, Frank's Fruithouse, was located at approximately 68th and J Streets and that Baker's Supermarket, the location of the robbery, was at Saddle Creek and Leavenworth Streets. Over objection, he then testified that it did not take more than 10 minutes to drive from Baker's Supermarket to Frank's Fruithouse. On cross-examination, Ferrell said he had made that drive several times at normal driving speed. He testified that it took different times depending on the volume of traffic. If it was closer to rush hour, it took about 10 minutes. If the traffic was lighter, it took less time.

■ Ordinarily, error is waived if after a party has adduced objectionable evidence, the opposing party adduces on direct or cross-examination evidence on the same subject. *Johnson v. Airport Authority*, 173 Neb. 801, 115 N.W.2d 426 (1962). However, the rule does not apply where the objecting party introduces similar evidence solely for the purpose of meeting the adversary's case by explaining or rebutting the original evidence. See *Westgate Rec. Assn. v. Papio-Missouri River NRD*, 250 Neb. 10, 547 N.W.2d 484 (1996). Here, the exception to the general rule does not apply because Rieger's counsel elicited additional testimony for his own purposes and not simply to explain or rebut the prior testimony.

The foundation for Ferrell's testimony as to the drive time was established on cross-examination. Accordingly, any lack of foundation for his testimony was cured on cross-examination, and Rieger's assignment of error has no merit.

■ Rieger's next assignment of error is that the trial court erred in determining that there was sufficient evidence to submit the case to the jury and to support a conviction. When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State*

*v. Myers*, 258 Neb. 300, 603 N.W.2d 378 (1999). In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. Such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *Id.* In affirming the conviction, we determine that the erroneously admitted evidence was harmless error, and therefore, we affirm the judgment of conviction and do not reverse and remand for a new trial because the properly admitted evidence was sufficient to support the conviction.

Rieger was charged with robbery in violation of Neb. Rev. Stat. § 28-324 (Reissue 1995), which states in part: "A person commits robbery if, with the intent to steal, he forcibly and by violence, or by putting in fear, takes from the person of another any money or personal property of any value whatever." We conclude there was sufficient properly admitted evidence to establish that Rieger took money from the clerk with the intent to steal and that he took the money forcibly or by putting the clerk in fear. Such evidence was sufficient to establish the elements of the crime of robbery. The properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the jury's finding of guilt beyond a reasonable doubt. The uncontroverted testimony of the clerk established that a man took money from her place of employment, Baker's Supermarket, on July 7, 1995, by putting her in fear with the intent to steal. At trial, Christensen and Wilson both identified Rieger as the robber. This properly admitted evidence was sufficient to sustain the conviction of robbery.

Finally, Rieger claims that the sentence imposed was excessive and was based upon information not properly before the court. Sentences within statutory limits will be disturbed by an appellate court only if the sentences complained of were an abuse of discretion. *State v. Abbink, ante* p. 211, 616 N.W.2d 8 (2000). An abuse of discretion takes place when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *State v. Canbaz*, 259 Neb. 583, 611 N.W.2d 395 (2000).

Rieger's sentence of 20 to 40 years' imprisonment is within the statutory limits for robbery with a finding of habitual criminal status. In preparing for sentencing, the trial court reviewed Rieger's file, probation and police reports, and presentence investigation report. The court considered Rieger's age, background, education, and prior criminal record; the nature of the offense; and the recommendation that probation would not be appropriate in this situation.

Rieger argues that 20 to 40 years' imprisonment is excessive and asks for modification under Neb. Rev. Stat. § 29-2308 (Reissue 1995). The information before the trial court included a presentence investigation report. This report indicates that Rieger has an extensive criminal record dating back 20 years, including convictions for robbery, use of a firearm to commit a felony, possession of marijuana, shoplifting, failure to appear, bank robbery, use of a firearm to commit a bank robbery, and the current robbery. His arrest record is even more extensive. Of a possible sentence of 10 to 60 years' imprisonment, 20 to 40 years' imprisonment falls within the statutory guidelines, and we find that the trial court did not abuse its discretion in imposing Rieger's sentence.

## CONCLUSION

For the reasons set forth herein, we affirm the judgment of conviction and sentence imposed.

AFFIRMED.