STATE OF NEBRASKA, APPELLEE, V. TERRY POWERS,
ALSO KNOWN AS PATRICK McBRIDE, APPELLANT.
634 N.W.2d 1

Filed June 12, 2001.   No. A-00-1023.

Dennis R. Keefe, Lancaster County Public Defender, and Robert G. Hays for appellant.

Don Stenberg, Attorney General, and Susan J. Gustafson for appellee.

Irwin, Chief Judge, and Sievers and Inbody, Judges.

Irwin, Chief Judge.

## I. INTRODUCTION

Terry Powers, also known as Patrick McBride, appeals from his conviction and sentence for terroristic threats. On appeal, Powers challenges, inter alia, the trial court's ruling concerning evidence of prior threats, jury instructions given by the trial court, the sufficiency of the evidence to support a conviction, and the sentence imposed by the trial court. Because we find the court did not commit reversible error, we affirm the conviction and sentence.

## II. BACKGROUND

On or about August 3, 1999, Don Stenberg received a letter purportedly signed by Powers, who was incarcerated at the time. The author of the letter stated, "I'm writing to you in regards to all of the threatening letter's [sic] that I've written to you in the past" and indicated that "in a very short time I'll be able to do all that I told you I would do. I'm in the last stages of my escape from here." The letter went on to indicate that the author, after escaping, would pay a visit to Stenberg, Harold Clarke, Gary Lacey, Thomas J. Monaghan, and David R. Stickman, and included home addresses for Stenberg, Clarke, and Lacey. Testimony at trial indicated that the addresses included in the letter were accurate.

On December 17, 1999, Powers was charged by information with making terroristic threats and with being a habitual criminal. The information alleged that Powers, on or about August 3, 1999, threatened to commit a crime of violence with the intent to terrorize Stenberg, Clarke, and/or Monaghan. Although it appears that Powers could have been charged with several different counts of terroristic threats, the information, for some reason, includes only one count, but alleges threats against all the individuals named. Additionally, the information alleged that Powers had twice been convicted and sentenced to at least 1 year in prison for previous crimes.

On May 30, 2000, Powers filed a motion requesting the State to disclose any intent to use evidence of other crimes, wrongs,

or acts pursuant to Neb. Evid. R. 404, Neb. Rev. Stat. § 27-404 (Reissue 1995). On June 12, the court held a hearing concerning evidence the State intended to offer involving prior threatening letters allegedly sent from Powers to Stenberg. At the hearing, the State alleged the prior letters were not rule 404 evidence, but, rather, were prior threatening statements specifically referred to in the letter for which Powers was charged. Powers argued the prior letters which the State intended to use were prior threatening letters for which Powers was not being charged and were evidence of prior misconduct as contemplated by rule 404 because they were evidence of other acts being used to prove the elements of the charged crime. The State presented evidence to demonstrate the two prior letters were written by Powers and were sent to and received by Stenberg. The court found the prior letters were not rule 404 evidence, but were part of the same occurrence for which Powers was charged and were therefore admissible.

The first prior letter was received by Stenberg on or about September 10, 1998. In that letter, the author stated, "I'm writing to you in regards to the threatening letter that I wrote to you. I would like to say I'm sorry for writing it to you. I don't have any plans on doing any of the threats that I made . . . ."

The second prior letter was received by Stenberg on or about October 28, 1998. In that letter, the author stated, "I'm writing with Gods [sic] authority to you. I have found out you are stupider then [sic] I thought. You should of [sic] accepted my apology but seeing how you didn't God has blessed me with his unconditionaled [sic] authority to come after you." The author further detailed that he intended to "rape, torture, and molest all of the bitches, and kids in [Stenberg's] family," that he would "make [Stenberg] watch," and that he would make Stenberg drink "some blood of all [his] family members after [Powers] kill[ed] them." The author further detailed plans to "beat [Stenberg] with a bat, and break one bone at a time til [sic] [he had broken] every bone in [Stenberg's] body." The author indicated that he planned to cut off Stenberg's genitals and "cut [Stenberg's] body up into 52 parts, and mail each part to each attorney general of each state." The author again indicated that he had "Gods authority to do all" of these things and told Stenberg

he "should count [his] days because Gods wrath is coming." The letter was signed "Gods wrath deliverer," although the author indicated in the letter that he was "Patrick McBride, f.k.a. Terry Powers." The envelope the letter was mailed in indicated with a stamp that it was "correspondence . . . mailed from an institution operated by the Nebraska Department of Corrections."

At trial, Powers renewed his objection to the admission of the two prior letters and to testimony concerning the two prior letters, again arguing that the evidence was covered by rule 404. The court overruled the objections and received the prior letters as exhibits, as well as allowing witnesses to testify about the letters' contents. At the conclusion of the evidence, Powers moved for dismissal of the charges as they related to Monaghan and Clarke, arguing there had been no evidence presented concerning them. The court granted the motion, leaving only the charge as it related to Stenberg.

Powers requested the court instruct the jury that a communication is a threat "if it carries the promise of evil under such circumstances that a reasonable person receiving the communication would believe that such was to ensue at the hands of the communicator, or his allies." Powers further requested a jury instruction defining "[t]o threaten another in a menacing manner" to be given in conjunction with the court's instruction that third degree assault by threatening another in a menacing manner was a lesser-included offense to the charged offense of terroristic threats. The court declined to give either instruction.

On June 14, 2000, the jury found Powers guilty of terroristic threats. On September 5, the court found Powers to be a habitual criminal and sentenced Powers to a term of 20 to 30 years' imprisonment. Powers filed this timely appeal.

### III. ASSIGNMENTS OF ERROR

On appeal, Powers has assigned 35 errors. For purposes of discussion, we consolidate Powers' assigned errors to six: (1) The court erred in determining the evidence of the prior letters was not rule 404 evidence; (2) the admission of the evidence of the prior letters, if not violative of rule 404, was in violation of a prior plea agreement between Powers and the State; (3) the court erred in receiving another exhibit, exhibit 10; (4) the court

erred in not giving Powers requested jury instructions defining when a communication is a threat and defining threatening another in a menacing manner; (5) the evidence was insufficient to support the conviction; and (6) the sentence imposed by the district court was excessive.

## IV. ANALYSIS

### 1. RULE 404 EVIDENCE

The first assignment of error that we will consider is Powers' assertion that the trial court erred in concluding that the prior letters and the testimony concerning the prior letters was not rule 404 evidence. On appeal, Powers asserts that the letters were evidence of prior misconduct, that the State should have been required to state on the record the specific proper purpose for which the evidence was offered, and that the court was required to find on the record the proper purpose for which the evidence was received and to give a limiting instruction to the jury concerning the proper purpose for which the evidence was received. Powers further asserts that the court erred in admitting the prior letters into evidence and allowing various witnesses to testify about the content of the letters. The State asserts again that the prior letters do not constitute rule 404 evidence and were relevant to proving that the letter for which Powers was charged was a threat to commit a crime of violence. As noted above, the letter for which Powers was charged did not specifically include any details, but, rather, indicated that the author intended to carry out previous threats, and the two prior letters demonstrated in disturbing detail what the previous threats were.

In all proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by the Nebraska Evidence Rules, not judicial discretion, except in those instances under the rules when judicial discretion is a factor involved in determining admissibility. *State v. Burdette*, 259 Neb. 679, 611 N.W.2d 615 (2000). The exercise of judicial discretion is implicit in Neb. Evid. R. 401, Neb. Rev. Stat. § 27-401 (Reissue 1995), and it is within the discretion of the trial court to determine relevancy and admissibility of evidence of other wrongs and acts under rule 404(2). *State v. Burdette, supra.* The

trial court's decision in this regard will not be reversed absent an abuse of that discretion. *Id.*

Rule 404(2) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

■ The proponent of evidence offered pursuant to rule 404(2), upon objection to its admissibility, is required to state on the record the specific purpose or purposes for which the evidence is being offered, and the trial court is required to state on the record the purpose or purposes for which such evidence is received. *State v. Burdette, supra.* Any limiting instruction given upon receipt of such evidence should likewise identify only those specific purposes for which the evidence was received. *Id.*

In the present case, Powers objected to the admission of the prior letters, asserting that they were evidence of other crimes, wrongs, or acts, and requested that the State be required to state the specific purpose for which the evidence was being offered and that the court make specific findings concerning the proper purpose for which the evidence was being received. The State argued, as it does on appeal, that the prior letters were not rule 404 evidence, but were "relevant to the elements of this offense, to prove the threat to commit a crime of violence and to prove that the threat was made with the intent to terrorize." Brief for appellee at 8.

Although the Nebraska Supreme Court has never squarely addressed the issue, the Eighth Circuit Court of Appeals has repeatedly discussed the use of prior conduct evidence that is intrinsically intertwined with providing context for the charged offense, rather than for a use as contemplated by rule 404. See, *U.S. v. Carroll*, 207 F.3d 465 (8th Cir. 2000); *U.S. v. O'Dell*, 204 F.3d 829 (8th Cir. 2000); *U.S. v. Phelps*, 168 F.3d 1048 (8th Cir. 1999); *U.S. v. Williams*, 95 F.3d 723 (8th Cir. 1996); *U.S. v. Luna*, 94 F.3d 1156 (8th Cir. 1996); *U.S. v. Forcelle*, 86 F.3d 838 (8th Cir. 1996); *U.S. v. Tate*, 821 F.2d 1328 (8th Cir. 1987); *U.S. v. Derring*, 592 F.2d 1003 (8th Cir. 1979). We think these cases

provide insight into how evidence such as the evidence at issue in the present case should be considered and treated.

Prior conduct which is inextricably intertwined with the charged crime is not considered extrinsic evidence of other crimes or bad acts and rule 404 does not apply. See, *U.S. v. O'Dell, supra*; *U.S. v. Luna, supra*; *U.S. v. Tate, supra*. The Eighth Circuit has held:

> "[W]here evidence of other crimes is 'so blended or connected, with the one[s] on trial as that proof of one incidentally involves the other[s]; or explains the circumstances; or tends logically to prove any element of the crime charged,' it is admissible as an integral part of the immediate context of the crime charged. When the other crimes evidence is so integrated, it is not extrinsic and therefore not governed by Rule 404(b)."

*U.S. v. Phelps*, 168 F.3d at 1057-58, quoting *U.S. v. Swinton*, 75 F.3d 374 (8th Cir. 1996). See, also, *U.S. v. Luna, supra*; *U.S. v. Forcelle, supra*; *U.S. v. Tate, supra*; *U.S. v. Derring, supra*. As such, prior conduct that forms the factual setting of the crime is not rendered inadmissible by rule 404. *U.S. v. Phelps, supra*; *U.S. v. Williams, supra*. See, also, *U.S. v. Forcelle, supra*. The State is entitled to present a coherent picture of the facts of the crime charged, and evidence of prior conduct that forms an integral part of the crime charged is not rendered inadmissible under rule 404 merely because the acts are criminal in their own right, but have not been charged. *U.S. v. Williams, supra*. A court does not err in finding rule 404 inapplicable and in accepting prior conduct evidence where the prior conduct evidence is so closely intertwined with the charged crime that the evidence completes the story or provides a total picture of the charged crime. See *U.S. v. Forcelle, supra*.

In the present case, the letter which was the basis of the charge against Powers provided:

> To: Mr. Stenberg
>
> I'm writing to you in regards to all of the threatening letter's [sic] that I've written to you in the past. I'm letting you know that in a very short time I'll be able to do all that I told you I would do. I'm in the last stages of my escape from here. I've got inside help . . . . I'm going to pay you

a visit at your home address at . . . yes I do know where you live. I'm going to have lots of [sic] with [your wife], and your 4 kids if there [sic] young enought [sic] if not I'll just kill all of you. . . . I'll be seeing you really soon, it'll be really fun.

The prior letters which were received and testified about provide the complete story and provide context to the charged letter. The prior letters include disturbing details of "all that [Powers] told [Stenberg he] would do." Because the prior conduct evidence "merely shows the full context of the charged crime, it is 'intrinsic evidence' not governed by Rule 404." *U.S. v. Carroll*, 207 F.3d 465, 468 (8th Cir. 2000). The evidence of the prior letters is not evidence of other crimes or acts as contemplated by rule 404, and the district court did not err in so holding.

The Supreme Court's holding in *State v. Canbaz*, 259 Neb. 583, 611 N.W.2d 395 (2000), is comparable. In *Canbaz*, the defendant had made various statements to neighbors and coworkers about wanting to kill his former girl friend. The State offered the statements during prosecution of the defendant for murdering his former girl friend. The trial court concluded that the prior statements were covered by rule 404 and gave a limiting instruction concerning the statements' proper purpose. On appeal, the Supreme Court held that these statements were not evidence of prior unrelated bad acts under rule 404, but were relevant evidence concerning the crime charged. Similarly, the evidence in the present case is not evidence of prior unrelated bad acts under rule 404, but is relevant evidence that Powers was threatening a crime of violence against Stenberg with the intent to terrorize by sending the letter for which he was charged. This assigned error is without merit.

### 2. PLEA AGREEMENT

Powers next asserts that if the evidence of the prior letters was properly found to be outside rule 404, then the evidence should be excluded under a plea agreement entered into between Powers and the State. In the plea agreement, Powers agreed to plead guilty or no contest to a charge of felony criminal mischief, and in exchange, the State agreed, in part, not to file "any indictments, informations or complaints that may arise from

correspondence" previously written by Powers and received by, inter alia, Stenberg. The plea agreement was entered into on May 19, 1999.

Powers argues that if the September 10 and October 28, 1998, letters are not considered evidence of prior bad acts governed by rule 404, then they must constitute the terroristic threat for which he is currently being prosecuted and that they are, accordingly, inadmissible pursuant to the plea agreement. We disagree.

As noted above, Powers is being charged with making a terroristic threat when he sent the August 3, 1999, letter to Stenberg. That letter is the only threat for which he is being charged and prosecuted. As we discussed above, the prior letters provide relevant evidence and context concerning the threat for which he is being charged, but they are not separately being charged and prosecuted. The State agreed in the plea agreement not to pursue any charges for the prior letters, but did not agree to never use the prior letters as evidence in a prosecution for subsequent criminal activity. See *United States v. Van Horn*, 789 F.2d 1492 (11th Cir. 1986). When Powers chose to send another letter promising to make good on his earlier threats, the prior letters became relevant evidence outside the purview of rule 404 and outside the purview of the plea agreement.

Moreover, the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. See Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 1995). See, also, *U.S. v. O'Dell*, 204 F.3d 829 (8th Cir. 2000). We therefore conclude that the trial court did not abuse its discretion in admitting the evidence. This assigned error is without merit.

### 3. EXHIBIT 10

Powers next asserts that the court erred in receiving exhibit 10, a "kite" written by Powers while he was incarcerated at the Department of Correctional Services. Powers argues that the exhibit had no probative value and was unfairly prejudicial. A review of exhibit 10 reveals that it is a handwritten request, signed by Powers, requesting certain individuals, including Lacey, to be present at a court hearing. Presumably, Powers

objects to the exhibit's introduction because some of the threatening letters referenced above also include threats against Lacey.

The State asserts that the exhibit was probative because it was a known sample of Powers' handwriting and was probative on the issue of whether he authored the other letters. Additionally, the State asserts that the court gave a limiting instruction on the proper purpose for which exhibit 10 was being offered, solely for handwriting comparison and not for its content. A review of the record indicates that such a limiting instruction was, indeed, given. As a result, we conclude that exhibit 10 was relevant as a means for the fact finder to compare handwriting, and because of the limiting instruction, the evidence's probative value is not substantially outweighed by the danger of undue prejudice. See rules 401 and 403. This assigned error is without merit.

### 4. JURY INSTRUCTIONS

#### (a) Defining When Communication Is Threat

Powers requested the following instruction be given to the jury:

A communication is a threat if it carries the promise of evil under such circumstances that a reasonable person receiving the communication would believe that such was to ensue at the hands of the communicator, or his allies.

To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *State v. Owens*, 257 Neb. 832, 601 N.W.2d 231 (1999). We determine that Powers' requested instruction, as set forth above, was not a correct statement of the law.

Neb. Rev. Stat. § 28-311.01 (Reissue 1995) provides, in relevant part, "(1) A person commits terroristic threats if he or she threatens to commit any crime of violence: (a) With the intent to terrorize another . . . or (c) In reckless disregard of the risk of causing such terror." The crime does not require an intent to actually execute the threats made, but requires the intent to terrorize the recipient as a result of the threat or a reckless disregard of the risk of causing such terror. See *State v. Saltzman*, 235 Neb. 964, 458 N.W.2d 239 (1990). The crime further does

not require that the recipient of the threat actually feel terrorized. *Id.* See, also, *State v. Rodriguez*, 6 Neb. App. 67, 569 N.W.2d 686 (1997).

In *State v. Schmailzl*, 243 Neb. 734, 502 N.W.2d 463 (1993), the Nebraska Supreme Court addressed the issue of whether the language of § 28-311.01 is unconstitutionally vague. In doing so, the court noted that several other state courts have held the words "threat" or "threaten" to be neither vague nor uncertain when used in similar statutes. The court cited, among other opinions, an opinion of the Supreme Court of Maine, with a parenthetical noting that the Maine court had held that " '[a] communication is a threat if it carries the promise of evil under such circumstances that a reasonable person receiving the communication would believe that such was to ensue at the hands of the communicator, or his allies.' " *Schmailzl*, 243 Neb. at 738, 502 N.W.2d at 466. The Nebraska Supreme Court then concluded that the statute is not unconstitutionally vague. However, the Supreme Court in *State v. Schmailzl* did not overrule the holding of *State v. Saltzman, supra*, that the state of mind of the recipient is not a necessary element of the crime of terroristic threats.

We conclude that the law in this state is that in a case for terroristic threats, the State need not prove that the recipient of the threat was actually terrorized. See, *State v. Saltzman, supra*; *State v. Rodriguez, supra*. This being the case, the fact that the Supreme Court parenthetically noted that the Maine Supreme Court has defined threat to include an analysis of whether a reasonable person would be terrorized does not make such a correct statement of law in this state. As such, the court did not err in denying Powers' requested jury instruction because it was not a correct statement of law.

(b) Defining "Threatening in Menacing Manner"

At trial, the court instructed the jury that it could find Powers guilty of terroristic threats, guilty of third degree assault, or not guilty. As such, the court instructed the jury on third degree assault as intentionally and knowingly threatening another in a menacing manner. Powers asserts that the court erred in not giving his requested instruction that defined threatening in a menacing manner to mean a promise to do another bodily harm

"made in such a manner as to intentionally cause a reasonable person in the position of the one threatened to suffer apprehension of being so harmed." At trial, the State resisted the requested instruction, arguing that it was not warranted because the court should not have instructed that third degree assault is a lesser-included offense of terroristic threats.

■ The trial court in this case properly administered a "step" instruction, wherein it instructed the jury to consider the crime of third degree assault only if it found that the State did not prove that Powers was guilty of terroristic threats. In *State v. Pribil*, 224 Neb. 28, 395 N.W.2d 543 (1986), the Nebraska Supreme Court held that appellate courts will presume that the jury followed the trial court's instruction and did not consider any of the purported lesser-included offenses after the defendant was found guilty of the primary charge against him or her. See, also, *State v. Derry*, 248 Neb. 260, 534 N.W.2d 302 (1995). The jury found Powers guilty of terroristic threats, and under the step instruction given by the court, the jury never reached the issue of third degree assault. Thus, we find that the jury never had the opportunity to apply the trial court's definition of threatening in a menacing manner. As such, even if the court did err in the definition provided, an issue we expressly do not reach, the error could not have resulted in any prejudice. See *State v. Derry, supra*. This assigned error is without merit.

### 5. SUFFICIENCY OF EVIDENCE

Finally, Powers challenges the sufficiency of the evidence presented by the State to support his conviction. When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Rieger*, 260 Neb. 519, 618 N.W.2d 619 (2000). In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of the witnesses, or reweigh the evidence. Such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed in a

light most favorable to the State, is sufficient to support the conviction. *Id.* A review of the record reveals that there was adequate evidence presented which, when viewed most favorably to the State, would allow a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. This assigned error is without merit.

### 6. EXCESSIVE SENTENCE

Finally, Powers asserts that his sentence of 20 to 30 years' imprisonment was excessive. Sentences within statutory limits will be disturbed by an appellate court only if the sentences complained of were an abuse of discretion. *State v. Rieger, supra.* An abuse of discretion takes place when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *Id.*

Powers' sentence of 20 to 30 years' imprisonment is within the statutory limits for terroristic threats with a finding of habitual criminal status. In preparing for sentencing, the trial court reviewed Powers' presentence investigation report. There is no abuse of discretion evident on the record, and this assigned error is without merit.

### V. CONCLUSION

Finding that the trial court did not err in finding evidence of prior threatening letters was not rule 404 evidence and that the State's use of the prior threatening letters did not violate a prior plea agreement, we conclude the court properly admitted the prior letters and allowed testimony about them. We further find that the court did not err in receiving exhibit 10. We further find that the court did not commit prejudicial error in instructing the jury and that the evidence presented was sufficient to support the conviction. Finally, we find that the sentence imposed by the trial court was not excessive. Accordingly, we affirm the conviction and sentence.

AFFIRMED.