STATE OF NEBRASKA, APPELLEE, V.
ROLDAN CARDONA, APPELLANT.

639 N.W.2d 653

Filed January 29, 2002.   No. A-01-451.

Mariclare Thomas, of Orton, Thomas & O'Connell, for appellant.

John C. McQuinn, Chief Lincoln City Prosecutor, for appellee.

HANNON, SIEVERS, and MOORE, Judges.

MOORE, Judge.

## INTRODUCTION

Roldan Cardona was convicted on the charge of refusing to submit to a chemical test in the county court for Lancaster County, Nebraska, in violation of Lincoln Mun. Code § 10.16.040 (1998). The Lancaster County District Court affirmed the lower court's conviction and sentence, and Cardona now appeals from the ruling of the district court.

## BACKGROUND

On July 14, 2000, Cardona was involved in a car accident that resulted in Cardona's being cited for driving under the influence, refusing to submit to a preliminary breath test, and refusing to submit to a chemical test.

Cardona was arraigned on August 8, 2000, and appeared without legal counsel. The presiding judge questioned Cardona as to

his hiring an attorney, employment status, and living arrangements. Cardona told the judge that he did not have an attorney, was not working, and lived in an apartment with his son. The judge then entered not guilty pleas on behalf of Cardona and appointed a public defender to represent Cardona.

The case was set for disposition without trial on September 19, 2000. Cardona's court-appointed counsel made an appearance and informed the court that Cardona did not want to plead to any of the charges and that an interpreter would be needed for trial because Cardona's English was limited.

Trial was held on October 30, 2000, with an interpreter present. At the beginning of the hearing, Cardona's counsel informed the court that Cardona would enter a plea of no contest to the charge of refusing to submit to a chemical test and that the two remaining counts were to be dismissed. The trial court accepted Cardona's plea and subsequently sentenced him to serve 7 days in jail and pay a $500 fine. The court also ordered him not to drive a motor vehicle for a period of 6 months and suspended his license for the same period of time.

Cardona then appealed to the district court alleging that the interpreter did not correctly communicate his directions to his legal counsel; that his plea was not entered freely, voluntarily, and knowingly; that the sentence imposed was excessive; and that he had ineffective legal counsel. The district court affirmed the judgment and sentence of the lower court, and this appeal was subsequently perfected.

## ASSIGNMENTS OF ERROR

On appeal, Cardona contends that the district court erred in failing to find that (1) his plea of no contest was not made intelligently and voluntarily, (2) the interpreter did not correctly communicate Cardona's directions to his legal counsel, (3) Cardona had ineffective assistance of counsel, and (4) the sentence imposed on Cardona was excessive. Cardona also alleges that the trial court committed plain error in failing to give the interpreter an appropriate oath.

## STANDARD OF REVIEW

■ Upon appeal from a county court in a criminal case, a district court acts as an intermediate appellate court, rather than as

a trial court, and its review is limited to an examination of the county court record for error or abuse of discretion. Both a district court and a higher appellate court generally review appeals from a county court for error appearing on the record. *State v. Hopkins*, 7 Neb. App. 895, 587 N.W.2d 408 (1998).

■ A trial court is afforded discretion in deciding whether to accept guilty pleas, and an appellate court will reverse the trial court's determination only in case of an abuse of discretion. *State v. Paul*, 256 Neb. 669, 592 N.W.2d 148 (1999).

■ Sentences within statutory limits will only be disturbed by an appellate court if the sentence complained of was an abuse of judicial discretion. *State v. Lobato*, 259 Neb. 579, 611 N.W.2d 101 (2000). An abuse of discretion takes place when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *Id.*

## ANALYSIS

### OATH OF INTERPRETER

We first address Cardona's assignment of error that the trial court committed plain error when it failed to administer an oath to the court-appointed interpreter as required in Neb. Rev. Stat. § 25-2405 (Reissue 1995).

A review of the transcript indicates that Cardona did not assign error to this issue in his appeal to the district court in his assignments of error filed December 13, 2000. Neb. Ct. R. of Cty. Cts. 52(I)(G) (rev. 2000) provides:

> [T]he appellant shall file with the district court a statement of errors, which shall consist of a separate, concise statement of each error a party contends was made by the trial court. Each assignment of error shall be separately numbered and paragraphed. Consideration of the case will be limited to errors assigned and discussed. The district court may, at its option, notice a plain error not assigned.

However, a review of the order issued by the district court in this case indicates that the issue was presented and argued to the district court and a ruling made thereon. Therefore, we elect to proceed in analyzing this matter.

The statutory provision relating to court interpreters cited by Cardona provides:

Every interpreter appointed pursuant to sections 25-2401 to 25-2406, before entering upon his or her duties as such, shall take an oath that he or she will, to the best of his or her skill and judgment, make a true interpretation to such person unable to communicate the English language of all the proceedings in a language which such person understands and that he or she will, in the English language, repeat the statements of such person to the court, jury, or officials before whom such proceeding takes place.

§ 25-2405.

In appendix 1 of the Nebraska Supreme Court Rules Relating to Court Interpreters, the following oath is provided:

I, ____, swear or affirm that I will, to the best of my skill and judgment, after my appointment as interpreter, make a true __(Language)__ interpretation of all court proceedings, probation activities, or any other proceeding into a language which the party understands and that I will in the English language repeat the party's statements to the court or jury.

The interpreter oath became effective on September 20, 2000.

The record reflects that the same interpreter was present when Cardona entered his plea of no contest and then again at sentencing. At Cardona's plea hearing, the interpreter was sworn in and given the following oath: "Do you swear that you will truthfully and accurately interpret for the defendant in this matter?," to which the interpreter responded, "I do." The interpreter was also present to interpret for Cardona at his sentencing hearing, but the court did not administer another oath to the interpreter prior to sentencing Cardona.

Nebraska case law dealing with matters of court interpreters in criminal cases is sparse. A review of the case law in the Eighth Circuit reflects that this issue has been addressed to some extent, but we have found no cases directly on point. However, we believe that some guidance can be gleaned from the circumstances set forth in *State v. Mitjans*, 408 N.W.2d 824 (Minn. 1987).

In Minnesota, the Legislature has promulgated rules relating to interpreters similar to those in Nebraska in that every qualified interpreter appointed shall take an oath. In *Mitjans*, a Spanish-speaking defendant had been arrested and brought in

for questioning. The defendant was initially questioned by a Spanish-speaking police officer, and then during subsequent questioning, the same officer served as an interpreter for another officer and the defendant. The police officer did not take an oath to interpret fairly before serving as an interpreter when the other officer questioned the defendant. Mitjans argued that his statements made during the subsequent questioning should be suppressed. The Minnesota Court of Appeals concluded, in part, that the police officer's failure to take an oath at the time he questioned the defendant violated the relevant statute. The Minnesota Supreme Court reversed and stated that "[t]he obvious purpose of the oath requirement in such a situation is to impress upon the interpreter that he is legally obliged to interpret fairly and accurately." *Id.* at 829. The court further stated that the police officer presumably had taken an oath as a police officer and knew at the time of the interrogation that he had a legal and ethical duty to translate fairly and accurately.

Although *Mitjans* is not directly on point, it does give some guidance in the instant case concerning the administration of the oath. The interpreter was administered an oath, albeit not in the precise language of the statute or the court rules, at Cardona's plea hearing on October 30, 2000. The interpreter was again present and interpreted for Cardona at the sentencing hearing. Presumably, after being given the oath at Cardona's plea hearing, the interpreter knew that he was legally obligated to interpret fairly and accurately at both the plea hearing and the sentencing hearing.

Plain error will be noted only where an error is evident from the record, prejudicially affects a substantial right of a litigant, and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. *State v. Gutierrez,* 260 Neb. 1008, 620 N.W.2d 738 (2001). We do not believe plain error is evident from the record in the instant case, and further, Cardona does not indicate how the court's alleged failure to administer the appropriate oath affected a substantial right or allege that the interpreter's translation was faulty.

Therefore, we conclude that the failure to administer the precise statutory oath to the interpreter at the plea hearing and the

failure to re-administer an oath at the sentencing hearing was not plain error and reject this assignment of error.

## PLEA OF NO CONTEST

Cardona next alleges that the district court erred in affirming the lower court's finding that Cardona freely, voluntarily, and knowingly waived his rights before accepting his plea of no contest because the trial court failed to make an adequate inquiry as to whether Cardona actually understood the consequences of a no contest plea.

The dialog between the court and Cardona at the time Cardona entered his plea of no contest to the charge of refusal to submit to a chemical test was as follows:

THE COURT: Okay. Sir, you're charged with on or about July 17th — no, I'm sorry — July 14th, July 14th, the year 2000, you did refuse to submit to a chemical test of your blood, breath or urine for the determination of alcohol. This does carry a possible penalty of a minimum seven, maximum 60 days imprisonment, four hundred to five hundred dollar fine, and a six months license suspension. Do you understand the charge and the possible penalties?

[Interpreter]: "Yes."

THE COURT: And how do you plead to the charge?

[Interpreter]: "No contest."

THE COURT: No contest. Do you understand that by pleading no contest you're waiving and giving up a number of rights guaranteed by both the U.S. and Nebraska Constitution?

[Interpreter]: (There was no audible response).

THE COURT: Do you understand that you're waiving and giving up your right to be presumed innocent; your right to confront and face your accusers; your right to bring your own witnesses and subpoena witnesses to tell your side of the facts; your right to remain silent and not incriminate yourself; your right to a trial; and your right to have the State produce evidence to convict you beyond a reasonable doubt. Do you understand you're waiving and giving up those rights?

[Interpreter]: "Yes."

THE COURT: Okay. And did you go over this form with the interpreter and your attorney?

[Interpreter]: "Yes."

THE COURT: And they're kinda the same rights — had the same rights I just told you.

[Interpreter]: (There was no audible response).

THE COURT: Have you had enough time to talk with your attorney?

[Interpreter]: "Yes."

THE COURT: And the agreement is if you change your plea to Count 2, the remaining counts will be dismissed. Is that your understanding?

[Interpreter]: "Yes."

THE COURT: Has anybody made any other promises to you or threats against you to get you to plead?

[Interpreter]: "No."

THE COURT: And, again, how do you plead to the charge of refusing to submit to a chemical test? Are you pleading no contest?

[Interpreter]: "No contest."

THE COURT: Do you enter this plea freely, voluntarily and knowingly?

[Interpreter]: "Yes."

THE COURT: And are you entering this plea waiving those rights that we talked about?

[Interpreter]: "Yes."

THE COURT: And do you feel like you know what you're doing when you plead no contest?

[Interpreter]: "Yes."

THE COURT: Factual basis.

[Cardona's attorney]: We'd stipulate to a factual basis, jurisdiction and venue and that he refused to take the test.

THE COURT: The Court makes the following findings beyond a reasonable doubt. The defendant's acting voluntarily. He understands the — he understands the nature of the charge. He understands his constitutional rights and freely, voluntarily and knowingly waives them. He understands the consequence of his plea. The plea was made intelligently, voluntarily and freely. There's a factual basis

to accept the plea. I do accept the plea and find you guilty beyond a reasonable doubt. Order a presentence investigation. Sentencing set December 8th at 11 o'clock in Courtroom 26. Is this a true first offense? Okay. The remaining counts are dismissed.

In order to support a finding that a plea of guilty or nolo contendere has been entered freely, intelligently, voluntarily, and understandingly, the court must (1) inform the defendant concerning (a) the nature of the charge, (b) the right to assistance of counsel, (c) the right to confront witnesses against the defendant, (d) the right to a jury trial, and (e) the privilege against self-incrimination; and (2) examine the defendant to determine that he or she understands the foregoing. Additionally, the record must establish that (1) there is a factual basis for the plea and (2) the defendant knew the range of penalties for the crime with which he or she is charged. *State v. Louthan*, 257 Neb. 174, 595 N.W.2d 917 (1999); *State v. Hays*, 253 Neb. 467, 570 N.W.2d 823 (1997); *State v. White*, 238 Neb. 840, 472 N.W.2d 720 (1991); *State v. Irish*, 223 Neb. 814, 394 N.W.2d 879 (1986).

In the trial court's examination of Cardona during the plea hearing, the trial court advised Cardona of the nature of the charges against him; his right to the presumption of innocence; his right to confront his accusers, to subpoena and present witnesses, and to remain silent and not incriminate himself; and his right to a trial. The court also advised Cardona that the State was required to prove his guilt beyond a reasonable doubt. The court did not, however, advise that he had a right to counsel. A criminal defendant who is represented by counsel need not be informed that she or he has a right to be so represented. *State v. Trackwell*, 250 Neb. 46, 547 N.W.2d 471 (1996).

Although the responses to the court's inquiry were given by the interpreter rather than Cardona, there is nothing in the record to suggest, nor does Cardona argue, that the interpreter did not accurately translate each question to Cardona and accurately give Cardona's response to each question to the court. Further, the record shows that the trial court adequately advised Cardona of the consequences of a no contest plea. Cardona's claim that he did not voluntarily, intelligently, and

understandingly enter his no contest plea is not supported by the record and is without merit.

## INTERPRETER COMMUNICATION

Cardona's next assignment of error alleges that the interpreter did not correctly communicate Cardona's directions and desires to his court-appointed counsel. Specifically, Cardona asserts that he repeatedly told his counsel that he did not want to plead to anything and that the interpreter unduly influenced him by persuading him to enter into a plea agreement instead of telling his attorney he wanted a trial.

The obvious difficulty that we have in reviewing this assignment of error is the lack of any record regarding conversations between the interpreter, Cardona, and his counsel. Presumably, any such conversations were held off the record, as all we have from the plea hearing are the court's questions and the interpreter's responses. There is no indication or argument that the court reporter did not make a verbatim record of the proceedings at the plea and sentencing hearings, as required by Neb. Ct. R. of Prac. 5 (rev. 2000), nor was there evidence of a request for any additional record as provided by said rule.

Based upon a review of the record from the plea hearing, limited as it is, there is no indication that Cardona was having a problem communicating with the interpreter or his counsel. Likewise, there is nothing in the record to indicate Cardona was hesitant in responding to the court's questions via the interpreter. At the sentencing hearing, Cardona declined an opportunity provided by the court to say anything further before he was sentenced. In fact, in response to the court's question, "Is there anything you want to say?" Cardona responded in the negative using English before his answer was even given by the interpreter for the court.

With no support in the record that Cardona was unable to communicate satisfactorily through the interpreter, we conclude that this assignment of error is without merit.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Cardona next contends that the district court erred in finding that his attorney did not provide ineffective assistance of counsel. Cardona claims that his attorney was ineffective for failing

to file a motion to suppress on the grounds that there was insufficient probable cause for Cardona to be arrested for driving under the influence and that an evidentiary hearing should have been conducted and thereafter the case be brought to trial. Cardona argues that had he prevailed on that issue, any evidence would have been suppressed, which would have prevented Cardona from being further prosecuted for refusal to submit to a chemical test.

In order to sustain a claim of ineffective assistance of counsel as a violation of the Sixth Amendment to the U.S. Constitution and Neb. Const. art. I, § 11, a defendant must show that (1) counsel's performance was deficient and (2) such deficient performance prejudiced the defendant, that is, demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *State v. Buckman*, 259 Neb. 924, 613 N.W.2d 463 (2000).

Cardona makes this ineffectiveness claim on direct appeal, and there has been no evidentiary hearing on his allegations. Claims of ineffective assistance of counsel raised for the first time on direct appeal do not require dismissal ipso facto; the determining factor is whether the record is sufficient to adequately review the question. *State v. Coleman*, 10 Neb. App. 337, 630 N.W.2d 686 (2001).

Because of the plea of no contest and the stipulation to the factual basis of Cardona's refusal to take the chemical test, the record is devoid of evidence concerning the initial stop of Cardona, other than references in the presentence report. The record before this court is therefore insufficient to adequately review the question of effectiveness of counsel. Any deficiencies of counsel or alleged prejudice to Cardona cannot be determined based on the record before us. Accordingly, we do not reach Cardona's claim of ineffective assistance of counsel on this direct appeal.

EXCESSIVE SENTENCE

Lastly, we address whether Cardona's sentence is excessive. The penalty imposed pursuant to § 10.16.040 for refusing to submit to a chemical test of blood, breath, or urine for the determination of alcohol or drug content is imprisonment in the "county

jail for not less than seven days nor more than sixty days," and a fine of "not less than $400.00 nor more than $500.00," along with an order "not to drive any motor vehicle . . . for a period of six months" and the "operator's license . . . be revoked for a like period" of time.

Cardona pled no contest to the charge of refusing to submit to a chemical test and was sentenced to serve 7 days in jail and pay a $500 fine. The court also ordered him not to drive a motor vehicle for a period of 6 months and suspended his license for the same period of time. Sentences within statutory limits will be disturbed by an appellate court only if the sentences complained of were an abuse of discretion. *State v. Powers*, 10 Neb. App. 256, 634 N.W.2d 1 (2001). An abuse of discretion takes place when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *Id.* Cardona's sentence was within the statutory limits. Having reviewed the record, including the presentence investigation report, we conclude that the trial court did not abuse its discretion in the sentence imposed.

### CONCLUSION

Finding no merit to the assigned errors, we affirm.

AFFIRMED.